UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **JODY LOMBARDO & BRYAN GILBERT,**<br><br>PLAINTIFFS,<br><br>v.<br><br>**CITY OF ST. LOUIS, RONALD BERGMANN, JOE STUCKEY, PAUL WACTOR, MICHAEL COGNASSO, KYLE MACK, ERICH VONNIDA, BRYAN LEMONS, ZACHARY OPEL, JASON KING, & ROLAND DeGREGORIO,**<br><br>DEFENDANTS. | Civil Action No. 4:16-CV-01637 NCC |

**POLICE OFFICER DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

The ten individually-named police officer defendants, Ronald Bergmann, Joe Stuckey, Paul Wactor, Michael Cognasso, Kyle Mack, Erich Vonnida, Bryan Lemons, Zachary Opel, Jason King, and Roland Degregorio, ("Defendants") state the following in support of their Motion to Dismiss Plaintiffs Jody Lombardo and Bryan Gilbert's ("Plaintiffs") Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure:

**I. Background**

Plaintiffs brought this twenty-count Complaint ("Complaint") against City and ten police officers employed by City under 42 USC § 1983 ("§ 1983"). The allegations and claims concern the death of Plaintiffs' biological son, Nicholas Gilbert ("Gilbert"), in the custody of the St. Louis Metropolitan Police Department on December 8, 2015. Plaintiffs sue each of the ten officers in both their individual capacities and their official capacities; this motion and memorandum addresses only the individual-capacity claims against the ten individually-named police officer defendants.

Plaintiffs direct fifteen of the twenty counts against Defendants. Ten counts in the Complaint allege that each of the individual defendants violated Gilbert's Fourth and Fourteenth Amendment rights by using excessive force. Five counts in the Complaint allege

that Bergmann, Stuckey, Wactor, Vonnida, and DeGregorio were deliberately indifferent to Gilbert's medical needs. One count alleges negligence against Defendants.

## II. Standard of Review

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. FED.R.CIV.PRO. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. A motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a court "must take all of the factual allegations in the complaint as true, but should *not* "accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. Argument

The Court should dismiss Plaintiffs' excessive force claims in Counts V, VII, IX, XI, XII, XIII, XV, XVI, XVII, and XVIII for failure to state a claim for which relief can be granted because Defendants are entitled to qualified immunity. The Court should also dismiss Plaintiffs' deliberate indifference to a medical need claims in Counts VI, VIII, X, XIV, and XIX for failure to state a claim for which relief can be granted because Defendants are entitled to qualified immunity. Finally, the Court should dismiss Count XX against Defendants because it is barred by the official immunity doctrine under Missouri law.

### A. The Qualified Immunity Standard

Under federal law, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Qualified immunity balances the need to hold public officials accountable for their actions with the need to shield those officials from harassment, distraction, and liability when they act reasonably, and exists "to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* Defendants seeking dismissal under Rule 12(b)(6) based on qualified immunity must show they are entitled to qualified immunity on the face of the complaint. *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016). The doctrine renders government officials

immune from liability for civil damages for discretionary acts that do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether a government actor is entitled to qualified immunity, courts make a two-step inquiry: (1) whether the facts demonstrate the deprivation of a constitutional or statutory right when viewed in a light most favorable to the plaintiff; and (2) whether that right was clearly established at the time of the deprivation. *Jones v. McNeese,* 675 F.3d 1158, 1161 (8th Cir. 2012). Courts may address either step first, *Pearson v. Callahan,* 555 U.S. 223, 236 (2009), but must dismiss the government actor based on qualified immunity unless the answer is yes to both. *Winslow v. Smith,* 696 F.3d 716, 731 (8th Cir. 2012).

### 1. **Qualified Immunity Bars Plaintiffs' Excessive Force Claims**

The Court should dismiss Counts V, VII, IX, XI, XII, XIII, XV, XVI, XVII, and XVIII of Plaintiffs' Complaint against Defendants based on qualified immunity because any force used against Gilbert was objectively reasonable under the circumstances.

The Fourth Amendment protects against unreasonable searches and seizures, and includes one's right to be free from the use of excessive force. For § 1983 excessive-force claims of arrestees and pretrial detainees, courts apply the constitutional standard of "objective reasonableness" established in *Graham v. Connor,* 490 U.S. 386, 388 (1989). *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001); *Davis v. White*, 794 F.3d 1008, 1011-12 (8th Cir. 2015). Courts must evaluate an officer's use of force given the facts and circumstances of the particular case, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Chambers v. Pennycook*, 641 F.3d 898, 905–06 (8th Cir. 2011) (quoting from *Graham*). Whether the force used was objectively reasonable requires a case-specific balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 906. It is well-established that police officers necessarily have the right "to use some degree of physical coercion or threat thereof to effect" a stop, arrest, or seizure. *Id.* at 905 (relying on *Graham*).

Here, Plaintiffs allege that on December 8, 2015, Gilbert had been arrested and booked for trespassing, and placed in a holding cell. Complaint ¶¶ 18-21. In the holding cell, Gilbert attempted to injure himself or hang himself using his clothing and the cell door. Complaint ¶¶ 21, 23, 24. The gravamen of the remaining factual allegations describe how the Defendants

3

attempted to restrain a struggling and non-compliant Gilbert using handcuffs, leg shackles, and body weight. Complaint ¶¶ 30-37. Notably, Plaintiffs do not allege that any of the Defendants struck Gilbert at any point during the struggle. Plaintiffs do not allege that the laceration Gilbert suffered during the struggle (from the concrete bench) caused or contributed to Gilbert's death.

Defendants acted as reasonable officers would under the same or certain circumstances. As a matter of law, Defendants could not stand idly by as Gilbert tried to commit suicide before their eyes, lest they subject themselves to a different claim under § 1983. Gilbert forced Defendants to intervene to protect Gilbert from himself. In their effort to intervene, the Court should follow the rationale in *Chambers* in finding that Defendants had the right to use some physical coercion to force Gilbert to stop his suicide attempt. Both implicitly and explicitly, Plaintiffs' Complaint establishes that Gilbert struggled against Defendants' efforts to prevent his suicide, which then merited more officers to respond. Implicitly, Gilbert's resistance is evidenced by the claim that three officers were attempting to handcuff Gilbert when "Sergeant Bergmann called for leg shackles and called more officers for assistance," and then four more officers came into the cell and actually did assist in restraining Gilbert. Complaint ¶¶ 33-34. Clearly, where three officers were unable to adequately restrain Gilbert, an objectively reasonable sergeant (i.e., commanding officer) would call for more officers to assist. Then, objectively reasonable officers who were called to assist in restraining a struggling detainee would act to further restrain that person.[1] Arguably, objective reasonable officers could have *escalated* the use of force in this situation; for example, using a Taser, pepper mace, or other less-lethal munitions to coerce compliance. Explicitly, Plaintiffs inform of Gilbert's active resistance against Defendants efforts to thwart his suicide when they allege that not until Gilbert was fully restrained and laid on the floor, "was [he] no longer struggling against the [Defendants]". Complaint ¶ 37.

The Court should find that Defendants use of force to prevent Gilbert's suicide and subsequent active resistance to restraint was objectively reasonable under the circumstances. Defendants needed to use force to prevent Gilbert from hanging himself, and then further needed to use force when Gilbert struggled against their efforts to stop his suicide. Thus, the

---

[1] Since the evaluation of a use of force is that of a "reasonable officer on the scene," the sheer number of police officers who participated in the effort to restrain Gilbert emphasizes how reasonable the response actually was; in other words, if using force to get Gilbert under control was objectively unreasonable in this situation, logic dictates that at least one out of ten officers would opt against participating.

4

Court should find that Defendants are entitled to qualified immunity against Plaintiffs' excessive force claims because Gilbert did not suffer a constitutional violation or deprivation in that Defendants' conduct was objectively reasonable under the circumstances when viewed from the perspective of a reasonable officer at the scene.

### 2. Qualified Immunity Bars Plaintiffs' Deliberate Indifference Claims

The Court should dismiss Counts VI, VIII, X, XIV, and XIX against Defendants Bergmann, Stuckey, Wactor, Vonnida, and DeGregorio ("D.I. Defendants") based on qualified immunity because Plaintiffs failed to plead adequate facts establishing deliberate indifference to a medical need under the Fourteenth Amendment.

Under federal law, deliberate indifference to a serious medical need of a prisoner constitutes the type of unnecessary and wanton infliction of pain prohibited by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This Eighth Circuit analyzes a pretrial detainee's § 1983 claim for deliberate indifference to a serious medical need under the Due Process Clause of the Fourteenth Amendment, not under the Eighth Amendment.[2] *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

### a) No Constitutional Violation Occurred

A plaintiff claiming deliberate indifference to medical need in violation of the Fourteenth Amendment must prove two components, one objective and one subjective. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need," *Id.*, which "must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Grayson v. Ross*, 454 F.3d 802, 808-09 (2006). "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need," *McRaven*, 577 F.3d at 980, and requires a mental state "akin to criminal recklessness." *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016). A plaintiff must allege facts that demonstrate "more than negligence, more even than gross negligence." *Id.* The requisite mental state can be inferred from facts demonstrating that a medical need was obvious and that the defendant's response was "obviously inadequate." *Id.*

---

[2] This distinction has no practical effect; "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

Here, as a threshold matter, Plaintiffs' Complaint does not adequately inform Defendants of what Gilbert's serious medical need was. Against Bergmann and Stuckey, Plaintiffs allege that Gilbert was in need of medical attention prior to the physical altercation (Complaint ¶¶ 128, 158). But then Plaintiffs allege that all the D.I. Defendants knew or should have known "Gilbert was injured, required medical attention, and that the ignorance of this fact would cause [him] injuries." Complaint ¶¶ 132, 162, 191, 254, 334. As to a claim for a medical need prior to the physical altercation, there are two possibilities. First, Plaintiffs claim Bergmann, Stuckey, and DeGregorio noted that Gilbert appeared to be demonstrating OBS, "a technical term to describe a person appearing to be emotionally disturbed." Complaint ¶ 26. Second, Gilbert was attempting to hang himself. Complaint ¶ 24. Either one of these claims must fail under the *McRaven*/*Grayson* analysis. The OBS claim must fail under the objective component of the deliberate indifference analysis because, as alleged, "a technical" medical need would logically not be obvious to a layperson, nor does the opinion of Bergmann, Stuckey, and DeGregorio qualify as "supported by medical evidence." The suicide attempt claim must fail under the subjective component because the D.I. Defendants (and the other defendants) did not disregard the need for medical attention, but rather acted to intervene and prevent Gilbert from hanging himself to death. Complaint ¶ 29.

As to a claim of a medical need after the physical altercation, Plaintiffs also fail to adequately plead a constitutional violation. Instead, Plaintiffs' Complaint demonstrates that once the D.I. Defendants became aware that Gilbert stopped breathing, they immediately acted in response to that medical need. Complaint ¶¶ 37-38. Taking the allegations as true, the Court must find that the D.I. Defendants called for an ambulance simultaneous to the discovery that Gilbert stopped breathing. *Id.* As such, D.I. Defendants were not indifferent in any way to Gilbert's needs under the subjective component of the deliberate indifference analysis.

Thus, the Court should find that the D.I. Defendants are entitled to qualified immunity because they did not cause Gilbert to suffer any constitutional violation.

### b) No Constitutional Right Was Clearly Established

If the Court finds that Gilbert did suffer a constitutional violation of deliberate indifference, it must also determine whether that right was clearly established at the time.

In this second step of the qualified immunity analysis, courts look to whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Grayson*, 454 F.3d at 809.

Here, Plaintiffs allege, at best, three instances of conduct by the D.I. Defendants they claim show deliberate indifference. First, Bergmann, Stuckey, and DeGregorio did nothing in response to their observation that Gilbert may be emotionally disturbed. Complaint ¶¶ 26, 28. Second, the D.I. Defendants acted to prevent Gilbert from hanging himself. Complaint ¶¶ 24, 30. Third, the D.I. Defendants called for an ambulance at the very moment they realized Gilbert stopped breathing. Complaint ¶¶ 37-38. The Court should find that a reasonable officer would believe that all of that conduct is lawful under these circumstances. Thus, the Court should dismiss Plaintiffs' deliberate indifference claims based on qualified immunity.

### B. Official Immunity Bars the Negligence Claim against Defendants

The Court should dismiss Count XX of Plaintiffs' Complaint because this state-law negligence claim is barred by Missouri's official immunity doctrine.

Under Missouri law, the doctrine of official immunity provides that "public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). A police officer's decision to use force in the performance of her duties is discretionary rather than ministerial, unless done in bad faith or with malice. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* "Bad faith" means "conscious wrongdoing" or "breach of a known duty through some ulterior motive." *Id.* (quotations omitted).

Here, Plaintiffs allege generalized negligence and breaches of duty against Defendants in Count XX. Plaintiffs do not allege that Defendants performed any duties with bad faith or malice in Count XX. Under *Davis*, Missouri's official immunity doctrine clearly shields Defendants from liability absent proof of bad faith or malice. Thus, the Court should dismiss Plaintiffs' claims against Defendants in Count XX under the doctrine of official immunity.

### IV. Conclusion

The Court should dismiss Plaintiffs' Complaint against Defendants for failure to state a claim. The Court should dismiss Counts V, VII, IX, XI, XII, XIII, XV, XVI, XVII, and XVIII for

failure to state a claim for which relief can be granted because Plaintiffs do not allege sufficient facts to establish that Defendants' use of force was objectively unreasonable and violative of Gilbert's clearly established rights. The Court should dismiss Counts VI, VIII, X, XIV, and XIX because Plaintiffs do not allege sufficient facts to establish a violation of clearly established rights based on deliberate indifference to a medical need. The Court should dismiss Count XX against Defendants because it is barred by official immunity under Missouri law. Defendants pray the Court grant their Motion to Dismiss with prejudice, and for any other relief the Court deems fair and reasonable.

Respectfully submitted,
MICHAEL A. GARVIN,
CITY COUNSELOR

  /s/ J. Brent Dulle #59705MO  
Associate City Counselor
CITY OF ST. LOUIS LAW DEPARTMENT
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-4644
Fax: 314-622-4956
DulleB@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

I hereby certify this Motion was electronically filed with the Court for service by means of Notice of Electronic Filing upon all attorneys of record on December 21, 2016.

  /s/ J. Brent Dulle  