UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JODY LOMBARDO and <br> BRYAN GILBERT, <br> <br> Plaintiffs, <br> <br> v. <br> <br> SAINT LOUIS CITY, RONALD BERGMANN, <br> JOE STUCKEY, PAUL WACTOR, <br> MICHAEL COGNASSO, KYLE MACK, <br> ERICH VONNIDA, BRYAN LEMONS, <br> ZACHARY OPAL, JASON KING, <br> and RONALD DEGREGORIO, <br> <br> Defendants. | Case No. 4:16-cv-01637-NCC |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Saint Louis City's ("the City") Motion to Dismiss (Doc. 7) and Defendants Ronald Bergmann, Michael Cognasso, Ronald Degregorio, Jason King, Bryan Lemons, Kyle Mack, Zachary Opal, Joe Stuckey, Erich Vonnida, and Paul Wactor's (collectively "Police Officer Defendants") Motion to Dismiss (Doc. 9). The Motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c)(1) (Doc. 12). For the following reasons, the City's Motion will be **GRANTED, in part** and **DENIED, in part**, and the Police Officer Defendants' Motion will be **DENIED**.

### I. Legal Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss a complaint must show " 'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 1999).

## II. Background

On October 20, 2016, Plaintiffs Jody Lombardo and Bryan Gilbert ("Plaintiffs") filed this twenty-count action pursuant to 42 U.S.C. § 1983 and Missouri state law against the City and Police Officer Defendants. The Police Officer Defendants are sued in their individual and official capacities. On December 8, 2015, Plaintiffs' son, Nicholas Gilbert ("Mr. Gilbert"), died while in the custody of the Saint Louis Metropolitan Police Department. Plaintiffs contend that Mr. Gilbert's death was the direct result of the use of excessive force (Counts V, VII, IX, XII, XIII, XV, XVI, XVII, and XVIII), a deliberate indifference to his need for medical care (Counts

2

VI, VIII, X, XIV, and XIX), and negligence by Defendants (Count XX). Plaintiffs further allege that the City is liable for the death of Mr. Gilbert because its policies, customs, and practices caused the deprivation of Mr. Gilbert's constitutional rights and thus his death (Counts I-IV).

The facts, in the light most favorable to Plaintiffs, are as follows. On December 8, 2015, at approximately 1:35 P.M., Mr. Gilbert was arrested by St. Louis City Police Officers for trespassing (Doc. 1 at ¶18). After transport from the scene, while Mr. Gilbert was handcuffed to a bench during his booking, the booking clerk noted that Mr. Gilbert was acting odd, biting at something and fidgeting in an unusual manner (*Id.* at ¶¶19-20). Later that day, at about 6:00 P.M., Mr. Gilbert began to act out in his holding cell, allegedly removing his sweat pants and tying them to the cell door in an attempt to hang himself (*Id.* at ¶¶21-22). An employee of the City alerted police officers that Mr. Gilbert appeared to be attempting to injure himself (*Id.* at ¶23). Defendants Officer Joe Stuckey, Officer Ronald DeGregorio, and Sergeant Ronald Bergmann responded to the clerk's call and made their way to Mr. Gilbert's holding cell (*Id.* at ¶25). They all noted that Mr. Gilbert appeared to be demonstrating Organic Brain Syndrome ("OBS"), which is a technical term to describe a person appearing to be emotionally disturbed (*Id.* at ¶26). Officer Stuckey, Officer DeGregorio, and Sergeant Bergmann entered the holding cell and forced Mr. Gilbert to the ground in an attempt to place his arms in handcuffs (*Id.* at ¶30). In the process of physically restraining Mr. Gilbert, Officer Stuckey, Officer DeGregorio, and Sergeant Bergmann caused Mr. Gilbert's head to strike the concrete bench inside the holding cell such that Mr. Gilbert sustained a laceration above his eye and immediately began bleeding (*Id.* at ¶¶31-32). While one officer placed handcuffs on Mr. Gilbert's left hand, two officers placed his right hand in handcuffs and Sergeant Bergmann called for leg shackles and more officers for

assistance (*Id.* at ¶33). Defendants Officer Kyle Mack and Officer Michael Cognasso entered the holding to cell to further restrain Mr. Gilbert (*Id.* at ¶34). Defendants Officer Erich VonNida, Officer Bryan Lemons, Officer Zachary Opal, and Officer Jason King followed, entering the holding cell and further restraining Mr. Gilbert by holding him down and placing leg shackles on Mr. Gilbert's legs (*Id.* at ¶35). Five to six officers were utilizing handcuffs, shackles, and their own body weight to restrain Mr. Gilbert (*Id.* at ¶36). At some point during the encounter, Police Officer Defendants realized Mr. Gilbert was not breathing and contacted the Saint Louis City Fire Department to request an ambulance (*Id.* at ¶38). Mr. Gilbert was pronounced dead at 7:32 P.M. on December 8, 2015, by the St. Louis Fire Department (*Id.* at ¶39).

On December 21, 2016, Defendants filed their Motions to Dismiss (Docs. 7, 9). In its Motion to Dismiss, the City asserts that (1) the Court should dismiss Plaintiffs' claims against the City in Counts I, II, III, and IV because Plaintiffs fail to allege sufficient facts to establish an official policy or unofficial custom for municipal liability under section 1983; (2) the Court should dismiss Plaintiffs' claim against the City in Count XX because it is barred by sovereign immunity under Missouri law; and (3) the Court should dismiss the official capacity claims against the ten individually-named police officers because those claims are redundant to the claims against the City (Doc. 7).

In their Motion to Dismiss, the Police Officer Defendants assert that (1) the Court should dismiss Plaintiffs' claims against the Police Officer Defendants in their individual capacities in Counts V, VII, IX, XII, XIII, XV, XVI, XVII, and XVIII based on qualified immunity because Plaintiffs failed to plead sufficient facts demonstrating the Police Officer Defendants used force that was not objectively reasonable under the circumstances; (2) the Court should dismiss

4

Plaintiffs' claims against the Police Officer Defendants in their individual capacities in Counts VI, VIII, X, XIV, and XIX based on qualified immunity because Plaintiffs failed to plead sufficient facts demonstrating that the Police Officer Defendants were deliberately indifferent to a medical need; and (3) the Court should dismiss Plaintiffs' state-law claims against the Police Officer Defendants in Count XX because they are barred by official immunity (Doc. 9).

### III. Analysis

**A. The City's Motion to Dismiss**

    **1. *Monell* Liability**

First, the City asserts that the Court should dismiss Plaintiffs' claims against the City in Counts I, II, III, and IV because Plaintiff fails to allege sufficient facts to establish an official policy or unofficial custom for municipal liability under section 1983 (Doc. 7 at 1-2). In *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities may be sued under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality. 436 U.S. at 690. Although Plaintiffs need not identify the specific unconstitutional policy to survive a motion to dismiss, they must, at the very least, allege facts that would support the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

The Court finds that Plaintiffs have sufficiently alleged facts which would support the existence of an unconstitutional official policy or unofficial custom to establish municipal liability under section 1983. In their Complaint, Plaintiffs allege that the City "maintained policies, procedures, customs and/or practices for proper restraining procedures to be used on

emotionally disturbed arrestees and detainees, including Mr. Gilbert" (Doc. 1 at ¶51). Plaintiffs further allege that the Police Officer Defendants acted in accordance with these policies, procedures, customs, and/or practices when they used excessive and unreasonable force to restrain Mr. Gilbert (*Id.* at ¶53). Plaintiffs also allege that (1) it was evident that Mr. Gilbert was in need of medical attention due to his exhibiting clear signs of OBS, (2) Police Officer Defendants knew or should have known that Mr. Gilbert was injured, emotionally disturbed, and required medical attention, and (3) the failure to provide immediate medical care for Mr. Gilbert deprived him of his constitutional and statutory rights and caused his untimely death (*Id.* at ¶¶97-99). Plaintiffs further assert that Police Officer Defendants acted in accordance with unidentified policies, procedures, customs, and/or practices when they were deliberately indifferent to Mr. Gilbert's serious medical needs (*Id.* at ¶101). Although fairly threadbare, the Court finds that Plaintiffs have sufficiently stated a claim for municipal liability under *Monell*. *See, e.g., Holloway v. Ameristar Casino St. Charles, Inc.*, No. 4:07 CV 218 DDN, 2008 WL 762086, at *4 (E.D. Mo. Mar. 19, 2008) (finding Plaintiff had sufficiently alleged facts that could plausibly support the existence of an unconstitutional policy or custom, in large part, because Plaintiff alleged that (1) the entity willfully participated with the officer to deprive her of her constitutional rights, and (2) the entity created a policy or custom under which unconstitutional practices occurred). Accordingly, the Court must deny this point.

**2. Sovereign Immunity**

Second, the City argues that the Court should dismiss Plaintiffs' claim against the City in Count XX because it is barred by sovereign immunity under Missouri law (Doc. 7 at 2). Under Missouri law, a public entity is protected from tort liability subject to two exceptions. Mo. Rev.

Stat. § 537.600. Sovereign immunity is waived in cases involving (1) injuries arising out of a public employee's operation of motor vehicle or (2) injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury. *Id.* Public entities may also waive their sovereign immunity for governmental functions to the extent that they are covered by liability insurance. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. 2008), *as modified on denial of reh'g* (Sept. 30, 2008). "Plaintiffs bear the burden of demonstrating the existence of the insurance and that it covered their particular claim, and must plead with specificity facts demonstrating their claim falls within an exception to sovereign immunity." *A.H. v. St. Louis Cnty., Mo.*, No. 4:14-CV-2069 CEJ, 2015 WL 4426234, at *5 (E.D. Mo. July 17, 2015) (internal quotation marks omitted) (quoting *Gregg v. City of Kansas City*, 272 S.W.3d 353, 359-60 (Mo. Ct. App. 2008)).

The Court finds sovereign immunity applies to Count XX against the City. Plaintiffs do not dispute that the City is a public entity (*See* Docs. 1 at ¶3, 16 at 4). However, Plaintiffs have not pleaded any facts indicating that an exception to the City's sovereign immunity applies. Instead, in their response to the City's Motion to Dismiss, Plaintiffs argue that they are entitled to learn of any applicable insurance policies (Doc. 16 at 4). In the alternative, Plaintiffs request leave to amend the Complaint to allege that the City waived sovereign immunity by purchasing liability insurance (*Id.* at 4-5). Plaintiffs are not entitled to conduct discovery on this point absent a well-pleaded allegation. Accordingly, the Court will dismiss Count XX against the City, with leave to amend.

### 3. Official Capacity Claims against Police Officer Defendants

Third, the City argues that the Court should dismiss the official capacity claims against

the ten individually-named police officers because those claims are redundant to the claims against the City (Doc. 7 at 2). It is well-settled law that when a state or municipal official is sued in his official capacity, the claim is treated as a suit against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Plaintiffs do not contest this assertion but, instead, argue that they are permitted to plead claims of official capacity liability alongside municipal liability (Doc. 16 at 5). However, "[i]t is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer." *Caruso v. City of St. Louis*, No. 4:16 CV 1335 RWS, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Bonenberger v. City of St. Louis*, No. 4:16cv00788 PLC, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016)). Accordingly, the Court will dismiss the official capacity claims against the Police Officer Defendants.

**B. Police Officer Defendants' Motion to Dismiss**

    **1. Qualified Immunity**

The Police Officer Defendants assert that the Court should dismiss Plaintiffs' claims against the Police Officer Defendants in their individual capacities in Counts V, VII, IX, XII, XIII, XV, XVI, XVII, and XVIII (excessive force claims), and in Counts VI, VIII, X, XIV, and XIX (deliberate indifference claims) based on qualified immunity (Doc. 9). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not available "if an official 'knew or reasonably should have

known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [individual], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).

In determining whether an officer is entitled to qualified immunity, the Court employs a two-step analysis that asks: (1) whether the alleged facts, when viewed in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right; and (2) whether the constitutional right being asserted is clearly established. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (cited cases omitted). The Court may address either question first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). "To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (quoted case and internal quotations marks omitted).

Because the Court is addressing the issue of qualified immunity in a motion to dismiss, the answers to these two questions are entirely dependent upon what Plaintiffs allege in the Complaint. *See Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) ("A rule 12(b)(6) dismissal based on qualified immunity is appropriate 'when the immunity is established on the face of the complaint.' ") (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)).

9

Thus, to prevail on their Motion to Dismiss based on qualified immunity, the Police Officer Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

As a preliminary matter, the Court notes that in considering qualified immunity "each [Police Officer Defendant's] conduct must be independently assessed . . . because liability for damages for a federal constitutional tort is personal." *Cross v. Mokwa*, 547 F.3d 890, 898 (8th Cir. 2008) (internal quotation marks omitted). Defendants fail to address their arguments at the individual actions of each Police Officer Defendant. Thus, in considering the early stage of the litigation, the Court could deny dismissal on this ground alone. The Court will address the merits of the Police Officers Defendants' claims in the interests of justice.

### a. Excessive Force

First, the Police Officer Defendants assert that the Court should dismiss Plaintiffs' claims against the Police Officer Defendants in their individual capacities in Counts V, VII, IX, XII, XIII, XV, XVI, XVII, and XVIII based on qualified immunity because Plaintiffs failed to plead sufficient facts demonstrating the Police Officer Defendants used force that was not objectively reasonable under the circumstances (Doc. 9 at 1-2). Specifically, the Police Officer Defendants assert that they acted as reasonable officers would under the same or certain circumstances (Doc. 10 at 4).

The test for determining whether excess force was used is whether "the amount of force used was objectively reasonable under the particular circumstances." *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). *See also Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this

circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process."). The Court evaluates the reasonableness of an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. *Brown*, 574 F.3d at 496. "This calculus allows for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

At the first step of the qualified immunity analysis, the Court accepts the factual allegations of Plaintiffs' Complaint as true and views all reasonable inferences in Plaintiffs' favor. Under this standard, Plaintiffs sufficiently allege a violation of Mr. Gilbert's constitutional right to be free from excessive force. Specifically, Plaintiffs allege that in response to a City employee alerting Police Officer Defendant that Mr. Gilbert appeared to be attempting to injure himself, Defendants Officer Stuckey, Officer DeGregorio, and Sergeant Bergmann entered the holding cell and forced Mr. Gilbert to the ground in an attempt to place his arms in handcuffs (Doc. 1 at ¶30). In so doing, Plaintiffs allege, they "forced [Mr. Gilbert's] head to violently strike the concrete bench inside the holding cell" (*Id.* at ¶31). As a result, Mr. Gilbert sustained a laceration above his eye and began bleeding "profusely" (*Id.* at ¶32). In response to a call for assistance, Police Officer Defendants Mack, Cognasso, VonNida, Lemmons, Opal, and King[1] entered the holding cell and further restrained Mr. Gilbert, some by holding him down and placing leg shackles on Mr. Gilbert's legs (*Id.* at ¶¶34, 35). At some

---

[1] Although Plaintiffs do not specifically name Defendant Officer Paul Wactor in this section, the Court notes that the Plaintiffs do allege these claims against each Police Officer Defendant in individual Counts later in the Complaint and also specifically name the Police

11

point during this altercation, the Police Officer Defendants realized Mr. Gilbert was not breathing and contacted the Saint Louis City Fire Department and requested an ambulance (*Id.* at ¶38). At 7:32 P.M. on December 8, 2015, Mr. Gilbert was pronounced dead by the Saint Louis City Fire Department (*Id.* at ¶39).

Plaintiffs further allege that "[t]he actions of the [Police Officer Defendants], in initiating and escalating the confrontation with Mr. Gilbert in his cell, by needlessly and improperly restraining Mr. Gilbert during the confrontation and by using unreasonable force against Mr. Gilbert, directly and proximately caused Mr. Gilbert's death" (*Id.* at ¶40). *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("The degree of injury [suffered in an excessive-force case] is certainly relevant insofar as it tends to show the amount and type of force used."). Plaintiffs thereafter properly allege these claims against each Police Officer Defendant in individual counts. Accordingly, the Court finds that, in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged facts that the Police Officer Defendants violated Mr. Gilbert's right to be free from excessive force.

Turning to the second step of the inquiry, the constitutional right asserted by the Plaintiffs is clearly established. *See id.* at 908 (right to be free from excessive force causing more than "de minimis injuries" is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person).

---

Officer Defendants, as a whole, in this section.

For the foregoing reasons, the Court finds that with their allegations of excessive force, Plaintiffs have sufficiently asserted the violation of a clearly establish constitutional right to withstand the Police Officer Defendants' Motion to Dismiss and, therefore, this point must be denied.

### b. Deliberate Indifference

Next, the Police Officer Defendants argue that the Court should dismiss Plaintiffs' claims against the Police Officer Defendants in their individual capacities in Counts VI, VIII, X, XIV, and XIX based on qualified immunity because Plaintiffs failed to plead sufficient facts demonstrating that the Police Officer Defendants were deliberately indifferent to a medical need. (Doc. 9 at 2). Specifically, the Police Officer Defendants assert that Plaintiffs have failed to properly allege a serious medical need or a constitutional violation. Further, the Police Officer Defendants argue, it would not be clear to a reasonable officer that this conduct was unlawful and, therefore, the constitutional right was not clearly established.

Because Mr. Gilbert was a pretrial detainee during his time at the jail, his deliberate indifference claim is based on the due process clause of the Fourteenth Amendment. *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017). "The standard we apply in this context borrows from the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates." *Id*. "To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that

13

has been prescribed." *Id.* To demonstrate a deprivation of medical care rising to the level of a constitutional violation, Plaintiffs must show that Defendants' mental state was "akin to criminal recklessness." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

Accepting the factual allegations in Plaintiffs' Complaint as true and viewing all reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs sufficiently allege a violation of Mr. Gilbert's constitutional right to be free from deliberate indifference to a serious medical need. As a preliminary matter, the Court notes that Plaintiffs raise these claims against only five of the ten Police Officer Defendants—Sergeant Bergmann (Count VI), Officer Stuckey (Count VIII), Officer Wactor (Count X), Officer VonNida (Count XIV), and Officer DeGregorio (Count XIX). Therefore, Plaintiffs must sufficiently allege how each of these Defendants was directly involved or personally responsible for any violation of Mr. Gilbert's constitutional rights. First, Plaintiffs have sufficiently alleged an objectively serious medical need. A "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). In this case, Plaintiffs assert that Mr. Gilbert was emotionally disturbed and suicidal and, as addressed in more detail below, the Police Officer Defendants were aware of Mr. Gilbert's medical need (Doc. 1 at ¶¶20, 21, 23, 24, & 26).

Second, Plaintiffs have sufficiently alleged that Sergeant Bergmann, Officer Stuckey, Officer Wactor, Officer VonNida, and Officer DeGregorio knew of Mr. Gilbert's serious medical need. Indeed, if taken as true, Plaintiffs assert that several of these officers had actual knowledge that Mr. Gilbert was mentally unstable. Specifically, Plaintiffs allege that Defendants

"Officer Stuckey, Officer DeGregorio, and Sergeant Bergmann all noted that [Mr. Gilbert] was demonstrating Organic Brain Syndrome ("OBS"), which is a technical term to describe a person appearing to be emotionally disturbed" (*Id.* at ¶26). Plaintiffs may also prove knowledge through circumstantial evidence. *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003). Plaintiffs note several instances that would lead the Court to infer that the Police Officer Defendants were aware of Mr. Gilbert's mental state. For example, Plaintiffs assert, "An employee of the City alerted police officers that Mr. Gilbert appeared to be attempting to injure himself" (Doc. 1 at ¶23).

Finally, Plaintiffs sufficiently allege that Sergeant Bergmann, Officer Stuckey, Officer Wactor, Officer VonNida, and Officer DeGregorio deliberately disregarded Mr. Gilbert's serious medical need. Sergeant Bergmann, Officer Stuckey, Officer Wactor, Officer VonNida, and Officer DeGregorio assert that, as alleged in Plaintiffs' Complaint, they responded to the cell in an attempt to prevent Mr. Gilbert from hanging himself with his sweat pants and, therefore, were not deliberately indifferent to Mr. Gilbert's emotional state. However, Plaintiffs allege, "the actions of [the Police Officer Defendants], in failing to seek proper medical attention for [Mr. Gilbert] after recognizing that he was presenting symptoms of OBS, directly and proximately caused Mr. Gilbert's death" (*Id.* at ¶41). Indeed, Plaintiffs allege Mr. Gilbert was already showing signs of mental instability during booking and he was not provided care prior to his suicide attempt (*Id.* at ¶20). *See Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000) ("[Plaintiff] had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to."). Then, again if taken as true, while officers responded to the suicide attempt, these officers failed to follow the City's policy

15

regarding it, used excessive force in their handling of it, and Mr. Gilbert died (Doc. 1 at ¶28 ("In recognizing [Mr. Gilbert] was demonstrating OBS, proper procedure would have been to deescalate the situation with Mr. Gilbert and take only the steps necessary to prevent him from injuring himself.")). *See Ryan*, 850 F.3d at 425-26 (internal quotation marks omitted) ("[A]n obviously inadequate response may create an inference that the officer recognized the inappropriateness of his conduct."). Accordingly, the Court finds that Plaintiffs have sufficiently alleged facts that Sergeant Bergmann, Officer Stuckey, Officer Wactor, Officer VonNida, and Officer DeGregorio violated Mr. Gilbert's constitutional right to be free from deliberate indifference to a serious medical need.

Turning to the second step of the inquiry, the constitutional right asserted by the Plaintiffs is clearly established. *Stewart v. Wagner*, 836 F.3d 978, 986 (8th Cir. 2016) ("We do not require a case directly on point before concluding the § 1983 defendant violated clearly established law, but existing precedent must have placed the statutory or constitutional question beyond debate.") (internal quotation marks omitted). Case law firmly establishes that a pretrial detainee has the right to be free from deliberate indifference to his substantial suicide risk and from deliberately indifferent denials of emergency medical care. *A.H.*, 2015 WL 4426234, at *2 (citing *Coleman*, 349 F.3d at 538); *Ryan*, 850 F.3d at 427.

For the foregoing reasons, the Court finds that with their allegations of deliberate indifference, Plaintiffs have asserted on the face of the Complaint the violation of a clearly established constitutional right sufficient to withstand the Police Officer Defendants' Motion to Dismiss and, therefore, this point must be denied.

**2. Official Immunity Doctrine**

Finally, the Police Officer Defendants assert that the Court should dismiss Plaintiffs' state-law claims against the Police Officer Defendants in Count XX because they are barred by official immunity (Doc. 9 at 2). "Under the doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but may be held liable for torts committed when acting in a ministerial capacity." *Shell v. Ebker*, No. 4:04-CV-1817 CAS, 2006 WL 1026982, at *10 (E.D. Mo. Apr. 14, 2006) (citing *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. 1985) (en banc)). "Official immunity does not apply, however, to discretionary acts done in bad faith or with malice." *Shell*, 2006 WL 1026982, at *11 (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986)); *see also Brown*, 574 F.3d at 500 ("When an official is exercising such discretionary functions, official immunity applies unless a willful or malicious wrong is committed.") (internal citation omitted). "Bad faith . . . embraces more than bad judgment or negligence." *Twiehaus,* 706 S.W.2d at 447 (quoted case omitted). "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* (quoted case omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* "Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited." *Terbrock v. Berry*, No. 2:09CV0013 JCH, 2010 WL 3075712, at *9 (E.D. Mo. Aug. 3, 2010) (quoted case omitted). An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official

immunity doctrine. *See Twiehaus*, 706 S.W.2d at 447.

The Court finds that Plaintiffs' claims against the Police Officer Defendants, when taken as true and viewed in the light most favorable to Plaintiffs, state a cause within the scope of bad faith or conscious wrongdoing. First, in Count XX, Plaintiffs generally allege that the actions of Defendants were taken with conscious disregard for the rights of Mr. Gilbert (Doc. 1 at ¶346). Second, in the excessive force counts (Counts V, VII, IX, XII, XIII, XV, XVI, XVII, and XVIII) against the individual Police Officer Defendants, Plaintiffs describe each of the Police Officer Defendants as engaging in the allegedly prohibited conduct "willfully, maliciously, in bad faith, and in reckless disregard of Mr. Gilbert's federally protected Constitutional rights" (*See, e.g., id.* at ¶ 116). Finally, based on Plaintiffs' allegations that Mr. Gilbert died as a result of the Police Officer Defendants' use of "unreasonable, excessive, and conscious shocking physical force" and deliberate indifference to Mr. Gilbert's serious medical needs, the Court could infer conscious wrongdoing or bad faith (*See, e.g., id.* at ¶145). *See, e.g., Carson v. Wayer,* No. 4:15-CV-507 RLW, 2015 WL 3440263, at *2 (E.D. Mo. May 27, 2015) (finding official immunity did not apply when plaintiff alleged that her son died as a result of defendants failing to take any action regarding her son's injuries and covering up their knowledge of his injuries). *See also c.f. Taylor ex rel. Taylor v. Isom*, No. 4:11-CV-1351 CAS, 2013 WL 1867106, at *8 (E.D. Mo. May 2, 2013) (finding official immunity applied when the complaint failed to contain any allegations that the officer used or caused the use of more force than was reasonably necessary in effecting plaintiff's arrest).

Accordingly, the Police Officer Defendants' Motion to Dismiss Count XX against them on the basis of official immunity is denied.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Saint Louis City's Motion to Dismiss (Doc. 7) is **GRANTED, in part** and **DENIED, in part**. Count XX against the City is **DISMISSED**. The official capacity claims against Defendants Ronald Bergmann, Michael Cognasso, Ronald Degregorio, Jason King, Bryan Lemons, Kyle Mack, Zachary Opal, Joe Stuckey, Erich Vonnida, and Paul Wactor are also **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants Ronald Bergmann, Michael Cognasso, Ronald Degregorio, Jason King, Bryan Lemons, Kyle Mack, Zachary Opal, Joe Stuckey, Erich Vonnida, and Paul Wactor's Motion to Dismiss (Doc. 9) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their Complaint, if they so choose, as indicated herein, no later than fourteen (14) days from the date of this Order.

**IT IS FURTHER ORDERED** that a Rule 16 Conference shall be set by separate order.

Dated this 16th day of June, 2017.

                                                  /s/ Noelle C. Collins
                                                  NOELLE C. COLLINS
                                                  UNITED STATES MAGISTRATE JUDGE