PLAINTIFF'S
EXHIBIT
2

EXHIBIT
A



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JODY LOMBARDO and BRYAN GILBERT, §
§
§
Plaintiffs, §
§
v. §
§
SAINT LOUIS CITY, §
§
and §
§
SERGEANT RONALD BERGMANN, §
OFFICER JOE STUCKEY, OFFICER §
PAUL WACTOR, OFFICER MICHAEL §
COGNASSO, OFFICER KYLE MACK, §
OFFICER ERICH VONNIDA, OFFICER §
BRYAN LEMONS, OFFICER §
ZACHARY OPAL, OFFICER JASON §
KING, and OFFICER RONALD §
DeGREGORIO, individually and in their §
official capacity as officers for the Saint §
Louis City Police Department §
§
Defendants. §

CASE NO.: 4:16-cv-01637-NCC

## EXPERT REPORT OF MICHAEL LEONESIO

I, Michael Leonesio, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following are my true and correct preliminary expert report findings in the above listed case.

### I. Introduction

On 1/26/2018, I was retained by plaintiff's counsel to provide opinions as to the following:

- Examination, evaluation, and analysis of St. Louis City police officer's use of force against Nicholas Gilbert, while in the district three holdover facility, on 12/8/2015;

- Examination, evaluation, and analysis of select St. Louis City Police Department

-1-

DEFENDANT'S
EXHIBIT
A
4/27/18 8m



practices and policies as related to this incident.

## II. Methodology

### A. Sources of Information

I have reviewed and, where necessary, analyzed the following incident related
documents and materials in my preparation of this report:

- Deposition transcript of Sergeant Ronald Berman;
- Deposition transcript of Officer Bryan Lemons;
- Deposition transcript of Officer Erich VonNida;
- Deposition transcript of Officer Jason King;
- Deposition transcript of Officer Joe Stuckey;
- Deposition transcript of Officer Michael Cognasso;
- Deposition transcript of Booking Officer/Clerk Veronica Wilburn;
- Deposition transcript of Mr. Phillip Washington;
- Deposition transcript of Mr. Justin Clerkley.
- Sustained and unsustained complaints of:
  - Sergeant Ronald Bergman;
  - Officer Michael Cognasso;
  - Officer Roland DeGregorio;
  - Officer Jason King;
  - Officer Bryan Lemons;
  - Officer Kyle Mack;
  - Officer Zachary Opel;
  - Officer Joe Stuckey;
  - Officer Paul Wactor.
- Defendants' Objections and Responses to Plaintiffs' Interrogatories and Requests for
  Production of:
  - City of St. Louis;
  - Sergeant Bergmann;
  - Officer Cognasso;
  - Officer DeGregorio;

- Officer King;
- Officer Lemons;
- Officer Mack;
- Officer Opel;
- Officer Stuckey;
- Officer VonNida;
- Officer Wactor.
- Medical Examiner's Report for, and autopsy photos of Nicholas Gilbert;
- Documents received from the St. Louis City Police Department, including Special Orders:
  - SO1-01 – Use of Force;
  - SO 8-01 – Arrest, Booking and Related Procedures;
  - SO 5-06 – Hospital and Emergency Medical Service Procedures.
- Complaint;
- Case Management Order.

### B. Process

I have reviewed and analyzed the above listed documents and/or materials and have prepared this report based on that effort. The opinions expressed in this report are held to a reasonable degree of professional certainty. In this report, and in subsequent testimony related hereto, I may cite or refer to court rulings and/or legal principles or concepts. I am not a lawyer. I do not offer legal opinions. I cite these rulings and refer to these concepts strictly as a police professional. As a police officer I am expected to have a working knowledge of clearly established law as it relates to police work. As a law enforcement trainer, I teach to these rulings and concepts and have done so for many years. As a law enforcement use of force subject matter expert I have applied these rulings and concepts in my evaluation of policies, procedures, training materials, and individual officer performance.

### C. Qualifications

I am a California Commission on Peace Officers Standards and Training (CA P.O.S.T.) Police Academy Instructor; Tactical Firearms Instructor; Critical Incident Response Instructor; Response to Active Shooter Instructor; and Defensive Tactics and Baton Instructor. I am a

graduate of various TASER® International user, instructor, master instructor, and armorer courses. I am certified as a forensic analyst and an instructor in Identification, Prevention, Management and Investigation of Sudden and In-Custody Deaths and Excited Delirium and Agitated Chaotic Events, and am co-developer and instructor of the ECD Forensic Analyst course through the Institute for the Prevention of In-Custody Deaths.

Since 2002, I have developed and provided entry-level, in-service, instructor-level, and command-level law enforcement instruction to agencies throughout the United States and Canada and have trained thousands of officers. Areas of training and instruction have included, but are not limited to: critical incident response; use of force; baton/impact weapons; handcuffing; weapon retention and disarming; tactical firearms; response to active shooter; defensive tactics and arrest control; responding to emotionally disturbed persons (EDP); the use of electroshock weapons (ESW), forensic analysis of ESW devices and related evidence; prevention and investigation of in-custody death; etc.

I have developed and provided medical, scientific, and civilian personnel training in the areas of: ESW evidence collection, preservation, and analysis; law-enforcement response to EDPs; and in-custody death investigation.

I have sponsored, participated in, and conducted research related to ESW safety, efficacy, and performance since 2008.

Since 2008, through my positions with the Oakland Police Department and Leonesio Consulting, I have performed over 10,000 electrical output, and operation and function tests on Tasertron, Air Taser, TASER International, Ultron, Stinger Systems, Karbon Arms, and PhaZZer brand electroshock weapons. I currently manage the only - electroshock weapon exclusive - independent testing laboratory in the United States.

As a member of the San Carlos and Oakland, California police departments, I was tasked with researching, writing, reviewing, and implementing department training curriculum, policy, and rules and procedures related to use of force; use of force reporting and investigation; and ESW use and testing. I sat as a subject matter expert on the Use of Force Review Boards at both

departments and have reviewed and rendered opinions in thousands of law enforcement use of force cases.

Based on my specialized training, experience, and career in law enforcement, I am familiar with generally accepted law enforcement standards and practices for detentions, arrests, use of force, and use of the TASER brand ESWs. These generally accepted law enforcement standards flow from decisions of the United States Supreme Court and lesser courts; state and federal government agencies and; national and international law enforcement research organizations, and include law enforcement best practices. My opinions in this matter are informed by, and are based on, such generally accepted standards and legal mandates.

A copy of my Curriculum Vitae, which states my qualifications to render this opinion, is attached. Also attached is a list of publications I have authored in the previous ten years.

### D. Right to Amend

I reserve the right to amend and/or supplement the contents of this report should new information and/or materials become available.

### III. Opinions

My opinions in this matter are informed by, and are based upon, my training and experience as outlined in section II, C – Qualifications; my review and analysis of the materials listed in section II, A - Sources of Information; cited legal decisions, scientific writings, policy and training references, and accepted law enforcement standards and industry best practices.

### A. Opinion 1 – Use of Force

My analysis examined St. Louis City officers' actions in light of the facts and circumstances that confronted them at the time they deployed force against Mr. Gilbert in the District 3 holdover facility[1] while taking into account "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."[2] This is

---

[1] *Scott v. United States*, 436 U. S. 128, 436 U. S. 137-139 (1978) As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

[2] *Graham v. Conner*, 490 U.S. 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985))

the same standard that should be applied by any law enforcement supervisor, internal affairs investigator, or other law enforcement professional tasked with evaluating a use of force incident.

## Totality of Circumstances: The Objectively Reasonable Officer Standard

The Supreme Court in *Graham* mandated that law enforcement use of force be analyzed under the Fourth Amendment and an objectively reasonable officer standard.[3] This standard recognizes that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation."[4]

To assure objective reasonableness, officers are trained to consider the severity of the crime at issue, whether the subject poses an immediate threat to the safety of officers or others, and whether the subject, in the course of the law enforcement contact, actively resists officers' lawful actions, or attempts to evade arrest by flight. These factors, however, are not exclusive. Officers are required to assess and reassess the totality of the circumstances they are facing throughout the encounter and must consider "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*."[5] This totality of the circumstances requirement is dynamic and mandates that officers adjust (initiate, escalate, de-escalate, cease, etc.) their force response(s) according to the circumstances that they face; and establishes "the amount of force that is necessary in a particular situation."[6]

After analyzing the facts of this case, it is obvious that Sergeant Bergmann, Officer Stuckey, and Officer DeGregorio failed to adequately reassess the circumstances presented to them during their encounter with Mr. Gilbert. As a result, officers failed to de-escalate their force response toward Mr. Gilbert even though, after handcuffing, he presented no immediate threat to officers or others, and posed no flight risk. In fact, after handcuffing, additional responding officers needlessly continued their force application by unnecessarily shackling Gilbert, and by continued application of physical and compressive force efforts despite the fact that he was contained and posed no threat.

---

[3] *Graham v. Conner*, 490 U.S. 396 (1989)
[4] *Graham v. Conner*, 490 U.S. at 396-97 (1989)
[5] *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994).
[6] *Graham v. Conner*, 490 U.S. at 396-97 (1989).

### Officer Response to Resistance: In-Field vs. Secure Facility

In an in-field use of force/seizure scenario, an officer's goal is to gain and maintain control of a given situation quickly, while assuring the safety of officers, the suspect, and the community. This rapid action is necessary in a field setting because of the unsecure nature of the environment, the unpredictable nature of the individual, and the possibility of escape. In the relatively secure settings of a police holding facility, however, the circumstances change necessitating a change in tactics on the part of officers.

In the controlled security of a law enforcement holding facility there are commonly (as we saw in this situation) substantial numbers of trained resources in the form of officers, deputies, or civilian jailers. The environment is contained. Ingress and egress are controlled. Prisoner's actions are restricted and monitored. Prisoners are searched and disarmed. And there is, frequently, a supervisor and/or trained medical personnel and advanced medical equipment on scene. These changes in conditions - versus the unsecure and uncontrolled environment of the patrol beat - must be factored into an officer's use of force response in order to assure objective reasonableness.

While the actions of Sergeant Bergmann, Officer Stuckey, and Officer DeGregorio against Mr. Gilbert - post handcuffing - *may* have been acceptable in a field setting, in the controlled confines of the police station, they were excessive, unnecessary, and unreasonable. Once handcuffed behind his back and secured inside of a cell within a secure holding facility, Mr. Gilbert presented no articulable or credible threat to officers or others, and posed no realistic flight risk.

Further, because the handcuffed Gilbert posed no threat or flight risk, the continued force actions of the other involved officers constituted excessive, unnecessary, and unreasonable force as well.

### Opinion 1 - Conclusion

Based on the above statements and my review of the case materials presented, it is my view that the involved officers' use of force against Mr. Gilbert, post handcuffing, was excessive, unnecessary, and unreasonable.

**B. Opinion 2 – Failure to Train**

Police agencies have an obligation to train their officers in the recurring tasks and duties that officers will face during their careers. If it is foreseeable that a police officer will face a particular task that may result in harm to another person, the officer's agency must provide training in how to conduct that task in a manner which is consistent with Constitutional principles and generally accepted law enforcement practices.

It is clear, from my review of the materials in this case, that the St. Louis Police Department does not train its officers on use of force in a jail/holding facility setting; an area where there is a patently obvious need. This is troubling because, as I have pointed out in this report, the circumstances faced by officers regarding when and how force is used in the confines of a police station are often very different than those faced in the field.

The United States Supreme Court has held that a municipality may be liable for violations of constitutionally guaranteed rights whose violations result from the municipality's failure to adequately train its employees if that failure reflects a deliberate indifference on the part of the municipality to the constitutional rights of its citizens.[7]

To establish whether training, or a lack there of, falls under this standard we ask the following three questions:[8]

1. Does the department know, to a moral certainty, that its employees will confront a given situation?
2. Will the situation present the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation?
3. Is the wrong choice by the employee likely to cause a deprivation of a citizen's constitutional rights?

In examining these questions, when combined with the testimony of the involved officers, and the

---

[7] *City of Canton v. Harris,* 489 U.S. 378 (1989).
[8] *Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992).

obvious frequency with which St. Louis officers find themselves operating within these circumstances, it becomes clear that: 1. Training is necessary, and 2. It is not being provided to St. Louis Police officers.

### Opinion 2 - Conclusion

Based on my review of the case materials presented, it is my view that the St. Louis Department knew, or should have known, that its officers required additional and/or specialized training in the unique circumstances involving the use of force within a jail/holding facility, and that this lack of training led to the deprivation of Mr. Gilbert's constitutional rights.

### IV. Previous Testimony

See attached.

### V. Compensation

See Fee Schedule and Professional Services Agreement attached.

Signed under penalty of perjury this 1st day of March 2018.

Michael Leonesio

<u>CURRICULUM VITAE</u>

## Michael Leonesio
412 South White Street, Suite 210, Athens, Tennessee 37303
Phone: (423) 933-1911 • Mobile: (510) 289-9705
Email: mike@leonesio.com
Web: www.leonesio.com

<u>**Professional Experience:**</u>

**2008-present: Founder/President, Leonesio Consulting, LLC, Athens, Tennessee**

Duties include:

- Electroshock weapon (ESW) testing and analysis;
- ESW probe and wire analysis;
- Digital evidence retrieval, analysis, verification, and authentication;
- Law enforcement training review, analysis, development, and implementation;
- Law enforcement policy review, analysis, development, and implementation;
- Litigation consultation and expert services.

**2005-present: Consultant, Institute for the Prevention of In-Custody Death, Inc. (IPICD), Henderson, Nevada.**

**2009-2012: Staff Instructor, Institute for the Prevention of In-Custody Death, Inc. (IPICD), Henderson, Nevada.**

Duties included:

- Curriculum review, analysis, development, and implementation;
- Instructional presentation.

**2005-2012: Police Officer, Oakland Police Department, Oakland, California**
Summary: General law enforcement and crime investigation responsibilities. Additional duties included the research, development, and implementation of the Department's ESW program including establishment and direction of the first, police department based, ESW exclusive, weapon and evidence analysis laboratory in the U.S.

Duties included:

- Electroshock Weapon (ESW) Program Coordinator;
- Department subject matter expert in ESW use and operation;
- Department subject matter expert for in-custody death prevention/investigation;
- Department use-of-force subject matter expert;

- Subject matter expert, Force Review Board;
- Subject matter expert in forensic analysis of ESWs and related evidence;
- Policy consultation, development, and implementation;
- Classroom and scenario based training curricula development and implementation;
- Police academy and in-service staff instructor;
- Community and outside agency educational staff;
- Review, analysis, and evaluation of all ESW related use of force reports;
- Force options training program development and implementation.

**2001-2005: Police Officer, San Carlos Police Department, San Carlos, California**
Summary: General law enforcement and crime investigation responsibilities.

Duties included:

- Research, development, design, implementation, and management of the Department's electroshock weapon (ESW) program;
- Lead ESW instructor;
- ESW subject matter expert;
- Use-of-force subject matter expert;
- Policy consultation, development, and implementation;
- Defensive tactics and arrest control techniques instructor;
- Firearms/tactical rifle instructor;
- Critical incident response instructor;
- President, San Carlos Police Officer's Association, 2002-2005.

**1987-1990: Flight Medic, East Bay Regional Park Police, Hayward, California**
Summary: Helicopter based emergency medical response, treatment, rescue, and transportation.

**1985-2001: Emergency Medical Technician**
Summary: Emergency and non-emergency medical treatment and transportation in field and hospital based settings. During my tenure as an Emergency Medical Technician I was employed by:

- Acme-Western Ambulance Service, Oakland, CA, 1985-1988;
- LifeStat Ambulance Service, Oakland, CA, 1988-1995;
- Children's Hospital and Medical Center, Oakland, CA, 1995-1997;
- MedStat Emergency Medical Services, Oakland, CA, 1997-1998;
- Alta Bates-Summit Medical Center, Berkeley, CA, 1998-2001.

Duties included:

- Field preceptor/skills instructor;
- CME instructor;
- Field Supervisor.

## Consulting:

I consult to various international, federal, state, and municipal law enforcement agencies and associated organizations on police use of force, police practices and electroshock weapon (ESW) subjects including:

- Use of Force analysis and evaluation;
- Training review and analysis;
- Policy review and analysis;
- ESW program review and analysis;
- ESW program development, maintenance, and monitoring;
- ESW testing and forensic analysis;
- ESW evidence collection, processing, analysis, and storage;
- Development and standardization of ESW maintenance and testing protocols.

## Continuing Professional Training:

- *Excited Delirium and Agitated Chaotic Event (ACE) Instructor Requalification* (IPICD, 2018)
- *Arrest-Related Death, Excited Delirium, Agitated Chaotic Events & Sudden In-Custody Death Conference* (IPICD, 2017)
- *Excited Delirium, Arrest-Related and Sudden In-Custody Death Conference* (IPICD, 2014)
- *Suicide Identification, Prevention, Management, and Investigation* (IPICD, 2014)
- *Excited Delirium, Agitated Chaotic Event Instructor Requalification* (IPICD, 2014)
- *Excited Delirium, Arrest-Related and Sudden In-Custody Death Conference* (IPICD, 2013)
- *Piexon JPX Master Instructor Course* (Piexon AG, 2013)
- *Deadly Force in the Digital Era* (Rains Lucia Stern Symposium, 2013)
- *Sudden Death, Excited Delirium, and In-Custody Death Conference* (IPICD, 2012)
- *Sudden Death, Excited Delirium, and In-Custody Death Conference* (IPICD, 2011)
- *Practical Solutions: Mental Health, Excited Delirium & Facts about the Combative and Vulnerable Patient* (CCPICD, 2010)
- *Sudden Death, Excited Delirium, and In-Custody Death Conference* (IPICD, 2009)
- *45th Annual Training Institute, Equipment, and Services Expo* (CNOA, 2009)
- *Use of Force by the Numbers: 4, 8, 14* (IPICD, 2009)
- *Forensic Analyst: Excited Delirium, In-Custody Deaths* (IPICD, 2009)
- *Stinger S200AT/S200C Update* (Stinger Systems, 2009)
- *Stinger TruVu Video System Update* (Stinger Systems, 2009)
- *TASER X3 Operator Update* (TASER International, 2009)
- *Electrical Biomedicine Conference* (IEEE, 2009)
- *Force Science Research Update* (Force Science Institute, 2009)
- *Are You Prepared? Excited Delirium Update* (CCPICD, 2009)
- *International Bioelectrics Symposium* (Bioelectrics International, 2009)
- *Scenario Based Training Principles* (Ti Training, 2009)

- *TASER Use of Force, Risk Management, and Legal Strategies* (TASER International, 2009)
- *Psychological and Biomechanical Aspects of Officer Involved Lethal and Less-Lethal Force* (AELE, 2009)
- *Sudden In-Custody Death, Excited Delirium Conference* (IPICD, 2008)
- *Heart Rhythm Society 29th Annual Scientific Sessions* (HRS, 2008)
- *TASER Master Instructor Update and Conference* (TASER International, 2008)
- *TASER Shockwave Instructor Update* (TASER International, 2008)
- *TASER X12/XREP Instructor Update* (TASER International, 2008)
- *Stinger S200 Operator/User* (Stinger Systems, 2008)
- *Stinger S200 Instructor* (Stinger Systems, 2008)
- *CA POST Instructor Development Course* (Napa Valley College, 2008)
- *Psychological and Biomechanical Aspects of Officer Involved Lethal and Less-Lethal Force* (AELE, 2007)
- *TASER Master Instructor Update and Conference* (TASER International, 2007)
- *In-Custody Death/Excited Delirium Investigation Instructor Update* (IPICD, 2007)
- *Sudden In-Custody Death, Excited Delirium Conference* (IPICD, 2007)
- *In-Custody Death/Excited Delirium Investigation Instructor* (IPICD, 2006)
- *TASER Instructor Update* (TASER International, 2006)
- *TASER Armorer/Technician* (TASER International, 2006)
- *Firearms/Tactical Rifle Instructor* (ALCO SO, 2005)
- *Defensive Tactics & Baton Instructor* (SBRTA, 2004)
- *Defensive Tactics Instructor* (ALCO SO, 2003)
- *Critical Incident Response Instructor Course* (SCPD, 2003)
- *Tactical Response to Active Shooter Incidents Instructor Course* (LAPD, 2003)
- *TASER Instructor* (TASER International, 2004)
- *TASER Operator/User* (TASER International, 2002)

## Professional Certifications:

### Tennessee Commission on Peace Officer Standards and Training (POST):
- Law Enforcement Officer's Safety Act Certificate, Tennessee POST, 2017
- Law Enforcement Officer's Safety Act Certificate, Tennessee POST, 2016

### California Commission on Peace Officer Standards and Training (POST):
- Advanced Peace Officer Certificate; California POST, 2010
- Academy Instructor, 2008
- Terrorism Liaison Officer, 2008
- Intermediate Peace Officer Certificate; California POST, 2007
- Firearms/Tactical Rifle Instructor, 2005
- Defensive Tactics & Baton Instructor, 2004
- TSA Law Enforcement Officer Flying Armed, 2004
- Basic Peace Officer Certificate; California POST, 2003
- Drug Influence and Recognition (11550 H&S), 2003

- Defensive Tactics Instructor, 2003
- Critical Incident Response Instructor, 2003
- Tactical Response to Active Shooter Incidents Instructor, 2003
- Basic Academy Certificate; California POST, 2001

**Computer Technology Industry Association (CompTIA):**
- Network +, 2012
- Security +, 2012

**Institute for the Prevention of In-Custody Deaths, Inc. (IPICD):**
- Instructor Requalification, 2018
- Instructor Requalification, 2016
- Instructor Requalification, 2014
- Instructor Requalification, 2012
- Instructor Requalification, 2010
- Staff Instructor Appointment, 2009
- Forensic Analyst Designation, 2009
- Instructor Requalification, 2008
- Instructor Update, 2007
- In-Custody Death/Excited Delirium Investigation Instructor, 2006

**Karbon Arms, Inc.:**
- Operator/User, 2012
- Instructor, 2012
- Armorer/Technician, 2012
- Senior Instructor, 2012

**Stinger Systems, Inc.:**
- Senior Instructor, 2010
- TruVu Video System Update, 2009
- Operator/User, 2008
- Instructor, 2008
- Armorer/Technician, 2008

**TASER International, Inc.:**
- X3 Weapon Update, 2009
- Extended Range Electronic Projectile System Instructor (XREP), 2008
- Shockwave Area Denial System Instructor, 2008
- Master Instructor, 2008
- Master Instructor, 2007
- Armorer, 2006
- Instructor Update, 2006
- Instructor, 2004
- Operator/User, 2002

**Professional Associations:**

- Member, International Association of Chiefs of Police (IACP)
- Member, Police Executive Research Forum (PERF)
- Member, National Association of Civilian Oversight of Law Enforcement (NACOLE)
- Member, National Alliance on Mental Illness (NAMI)
- Member, CIT (Crisis Intervention Team) International
- Member, Institute of Electronic and Electrical Engineers (IEEE)
- Member, National Tactical Officers Association (NTOA)
- Member (retired), Peace Officer's Research Association of California (PORAC)
- Member, National Fraternal Order of Police (FOP)
- Member, Tennessee Association of Retired Law Enforcement Officers

**Professional Awards:**

- Certificate of Appreciation; National Alliance on Mental Illness (2017)
- Letter of Appreciation; Las Vegas Metropolitan Police Department (2010)
- Outstanding Performance Award; Oakland Police Department (2010)
- Advanced Peace Officer Certificate; California POST (2010)
- Good Conduct Ribbon; Oakland Police Department (2009)
- Chief's Letter of Commendation; San Francisco Police Department (2008)
- Distinguished Service Award; Oakland Police Department (2007)
- Intermediate Peace Officer Certificate; California POST (2007)
- Captain's Certificate of Commendation; Oakland Police Department (2007)
- Unit Citation Award (2); Oakland Police Department (2005, 2007)
- Basic Peace Officer Certificate; California POST (2003)
- Senate Certificate of Recognition; California State Senate (2003)
- Certificate of Special Congressional Recognition; US House of Representatives (2003)
- Chief's Certificate of Commendation; San Carlos Police Department (2002)
- Life Saving Award; San Carlos Police Department (2002)
- Heroism Award; Peninsula Council of Lions Clubs (2002)
- Basic Academy Certificate; California POST (2001)

**Published Works:**

*"Test Methods for Measuring the Electrical Output of Electroshock Weapons"*: Journal of Biomedical Systems & Emerging Technologies (July 2016)

*"Development of Training Philosophies for Electroshock Weapons (ESWs)"*: Defense Research and Development Canada (October 2011)

*"Revision to DGO K-3, Use of Force"* (OPD SO 9051) Oakland Police Department, Oakland, CA (October 2010)

*"Electronic Control Device Evidence: How to Collect, Analyze, and Use It"*: Police and Security News; IACP Edition (September/October 2010)

*"Electronic Control Devices: Evidence, Data and Weapon Analysis"* Forensic Analyst: Excited Delirium, Sudden, In-Custody Deaths. Baltimore, MD: Institute for the Prevention of In-Custody Deaths, Inc. (October 2009, April 2010)

*"Forensic Analysis Handbook: Electronic Control Devices"*: IPICD, Inc., Henderson, NV (August 2010)

*"Use of the Electronic Weapon"* (OPD TB III-H.1) Oakland Police Department, Oakland, CA (September 2010)

*"Reporting of In-Custody Injuries"* (OPD SO 8999) Oakland Police Department, Oakland, CA (July 2009)
*"Elements of Success: Design and Implementation of an Effective Electronic Weapons Program"* BioElectrics International Symposium. Columbia, MO: University of Missouri (June 2009)

*"Use of Electronic Weapons on Restrained Persons and Referrals of Electronic Weapons Incidents to the Force Review Board"* (OPD SO 8970) Oakland Police Department, Oakland, CA (December 2008)

*"Excited Delirium: A Medical Emergency"* (OPD TB V-K) Oakland Police Department, Oakland, CA (January 2007)

*"Use of the TASER®"* (OPD TB III-H.1) Oakland Police Department, Oakland, CA (September 2007)

*"Use of the TASER® ECD"* San Carlos Police Department, San Carlos, CA (August 2003)

**Professional Presentations:**

November 2017, San Francisco Police Commission (public meeting); *Questions and Concerns; are ECW's Right for San Francisco?*

June 2017, San Francisco Police Commission (public meeting); *Policy, Training, and Industry Best Practices; a Guide for ECW Program Development and Implementation*

June 2017, San Francisco, CA: San Francisco Police Commission (CED stakeholder meeting); *Use, Effectiveness, and the Value of Introducing ECWs to the Community*

November 2013, Ottawa, Ontario, Canada: Royal Canadian Mounted Police; *ESW Measurement and Testing* presentation

May 2013, Concord, CA: Rains Lucia Stern, PC Deadly Force in the Digital Era Symposium; *How Technology Impacts Critical Incident Investigations*

October 2012, Las Vegas, NV: Las Vegas Metropolitan Police Department; *Karbon™ Arms MPID Technical Presentation*

August 2011, Hampton, VA: IPICD ECD Forensic Analyst Course; *ECD Forensic Analyst™*

March 2011, Town of Poughkeepsie, NY: IPICD ECD Forensic Analyst Course; *ECD Forensic Analyst™*

October 2011, Ottawa, Ontario, Canada: Defense Research and Development Canada Conducted Energy Weapons Strategic Initiative Meeting; *Testing Strategies for Conducted Energy Weapons*

January 2011, Gaithersburg, MD: United States Department of Commerce, National Institute of Standards and Technology (NIST), Office of Law Enforcement Standards (OLES); *Standard Test Methods; Electroshock Weapon Test Protocols and Analysis*

January 2011, Gaithersburg, MD: United States Department of Commerce, National Institute of Standards and Technology (NIST), Office of Law Enforcement Standards (OLES); *When Electroshock Weapons Fail; A Risk Management Perspective*

January 2011, Gaithersburg, MD: United States Department of Commerce, National Institute of Standards and Technology (NIST), Office of Law Enforcement Standards (OLES); *Operator Training; An Educational Approach*

December 2010, Las Vegas, NV: IPICD ECD Forensic Analyst Course; *ECD Forensic Analyst™*

November 2010, Las Vegas, NV: IPICD Annual Conference; *Electronic Control Devices: Evidence and Device Analysis*

September 2010, Gaithersburg, MD: United States Department of Commerce, National Institute of Standards and Technology (NIST), Office of Law Enforcement Standards (OLES), Detection, Enforcement and Inspection Program; *Measurement of Electroshock Weapon Outputs*

July 2010, Oakland, CA: Law Offices of Meyers Nave, Litigation/Police Civil Rights Section; *ECD Weapon and Evidence Analysis*

April 2010, Woodland, CA: Yolo County Crisis Intervention Team Training; *Excited Delirium: A Field Guide to Recognition and Intervention*

April 2010, Las Vegas, NV: Clark County Crime Investigation Response Team (CIRT); *Electronic Control Device Weapon and Evidence Analysis*

April 2010, Niagara Falls, Ontario, Canada: CCPICD Practical Solutions; Mental Health, Excited Delirium & Facts about Combative and Vulnerable Patients; *Electronic Control Devices: Evidence, Data and Weapon Analysis*

October 2009, Baltimore, MD: IPICD Forensic Analyst Conference; *Electronic Control Devices: Evidence, Data and Weapon Analysis*

June 2009, University of Missouri, Columbia: 2009 BioElectrics International Symposium; *Elements of Success: Design and Implementation of an Effective Electronic Weapons Program*

October 2008, San Francisco, CA: San Francisco Police Department Conducted Energy Device Workshop; *CED Roundtable Presentation*

April 2007, Fresno, CA: Central San Joaquin Valley Risk Management Authority; *Electronic Control Device Risk Management Presentation*

November 2006, Oakland, CA: Oakland Police Department; *TASER® Use of Force, Risk Management and Legal Strategies*

August 2006, Oakland CA: Alameda County Medical Center, Highland Hospital Medical Staff; *TASER® Electronic Control Devices; EDP, Excited Delirium and In-Custody Death*

## Medical/Scientific Research:

I have been, and continue to be, involved in electroshock weapon medical, scientific, and phenomenological research projects. The following are some of the projects in which I have participated:

- October 2010: University of Missouri; Columbia, MO
- July 27-31, 2009: TASER® International, Inc.; Scottsdale, AZ
- June 28, 2009: TASER® International, Inc.; Scottsdale, AZ
- February 3-4, 2009: TASER® International, Inc.; Tucson, AZ
- June 12, 2008: Stinger™ Systems, Inc.; Columbia, MO
- April 14, 2008: TASER® International, Inc.; Scottsdale, AZ
- April 7, 2008: TASER® International, Inc.; Scottsdale, AZ
- February 18, 2008: TASER® International, Inc.; Scottsdale, AZ

## Expert Testimony:

I have qualified and testified as an expert in state and federal court proceedings, in the areas of police practices and procedures, law enforcement best practices, use of force analysis and investigation, law enforcement training, law enforcement policy, and electroshock weapons.



**Leonesio Consulting, LLC**
412 South White Street • Suite 210
Athens • Tennessee 37303
Phone: (423) 933-1911 • Web: www.leonesio.com

---

## Previous Testimony

1. **Norman v. Camden County et al.**
   **Case Number:** 2:2012-CV-04210
   **Court:** United States District Court, Western District of Missouri, Central Division
   **Retained By:** The Simon Law Firm
             800 Market St.
             St. Louis, MO 63101
   **Deposition Date:** June 18, 2013

2. **Rosenblatt v. City of Hillsborough et al.**
   **Case Number:** C12-5210 LB
   **Court:** United States District Court, Northern District of California
   **Retained By:** Casper, Meadows, Schwartz & Cook
             2121 N. California Blvd.
             Walnut Creek, CA 94596
   **Deposition Date:** October 8, 2013

3. **Martin v. City of Brea et al.**
   **Case Number:** SACV12-01846
   **Court:** United States District Court, Central District of California
   **Retained By:** White & Reed LLP
             5757 W Century Blvd.
             Los Angeles, CA 90045
   **Deposition Date:** December 9, 2013
   **Court Testimony Date:** October 30, 2014

4. **Mitchell v. TASER International, Inc. et al.**
   **Case Number:** 09-CV-11480
   **Court:** United States District Court, Eastern District of Michigan, Southern District
   **Retained By:** Goodman & Hurwitz, PC
             1394 East Jefferson Avenue
             Detroit, MI 48207
   **Deposition Date:** January 6, 2014

5. **Wilson v. St. Charles County et al. and TASER International, Inc.**
   **Case Number:** 4:11-CV-00790
   **Court:** United States District Court, Eastern District of Missouri, Eastern District
   **Retained By:** Williamson Law Firm
                    20750 Ventura Blvd.
                    Woodland Hills, CA 91364
   **Deposition Date:** February 20, 2014

6. **Hesterberg v. United States (National Park Service) et al.**
   **Case Number:** C 13-01265 JSC
   **Court:** United States District Court, Northern District of California, San Francisco
   **Retained By:** Haddad & Sherwin
                    505 Seventeenth St.
                    Oakland, CA 94612
   **Deposition Date:** March 25, 2014
   **Court Testimony Date:** August 12, 2014

7. **McGinnis v. City of North College Hill, et al.**
   **Case Number:** 1:13CV423
   **Court:** United States District Court for the Southern District of Ohio
   **Retained By:** Gerhardstein & Branch
                    432 Walnut St., Suite 400
                    Cincinnati, OH 45202
   **Deposition Date:** March 27, 2014

8. **Sterling, et al. v. City of Antioch, et al.**
   **Case Number:** 13 CV 00812 NC
   **Court:** United States District Court, Northern District of California
   **Retained By:** Casper, Meadows, Schwartz and Cook
                    2121 North California Blvd.
                    Walnut Creek, CA 94596
   **Deposition Date:** August 28, 2014

9. **Salgado v. City of West Miami, et al.**
   **Case Number:** 12-CV-24458
   **Court:** United States District Court, Southern District of Florida
   **Retained By:** Gold & Gold P.A.
                    2700 North Military Trail
                    Boca Raton, FL 33431
   **Deposition Date:** September 8, 2014

10. **McElroy v. Joyner**
    **Case Number:** 3:13 CV 4576 CRB
    **Court:** United States District Court, Northern District of California
    **Retained By:** Burnham Brown
          P.O. Box 119
          Oakland, CA 94604
    **Declaration Date:** March 2, 2015

11. **Hardy v. City of Chicago, et al.**
    **Case Number:** 12 L 2632
    **Court:** Circuit Court of Cook County, Illinois
    **Retained By:** Foutris Law Office, Ltd.
          53 West Jackson St.
          Chicago, IL 60604
    **Deposition Date:** October 6, 2014
    **Court Testimony Date:** March 12, 2015

12. **Shields v. State of California, et al.**
    **Case Number:** RG14-734700
    **Court:** Superior Court of the State of California
    **Retained By:** Williamson Law Firm
          20750 Ventura Blvd., Suite 345
          Woodland Hills, CA 91364
    **Deposition Date:** February 17, 2016
    **Testimony Date:** April 21, 2017

13. **Rogers v. Board of County Commissioners of Torrance County, et al.**
    **Case Number:** D-722-CV-2014-00005
    **Court:** Seventh Judicial District Court, County of Torrance, State of New Mexico
    **Retained By:** Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP
          P.O. Box 8180
          Santa Fe, NM 87504
    **Deposition Date:** February 25, 2016

14. **Logan v. St. Louis County, et al.**
    **Case Number:** 4:15CV1712 HEA
    **Court:** United States District Court, Eastern District of Missouri, Eastern Division
    **Retained By:** The Simon Law Firm
          800 Market St., Suite 1700
          St. Louis, MO 63101
    **Deposition Date:** October 27, 2016

15. **Alcayde v. City of Ronan, et al.**
    **Case Number:** 9:16-CV-00086 DLC
    **Court:** United States District Court, District of Montana, Missoula Division
    **Retained By:** Bechtold Law Firm PLLC
        317 E. Spruce St.
        Missoula, MT 59807
    **Deposition Date:** June 27, 2017

16. **Hermiz v. City of Royal Oak, et al.**
    **Case Number:** 2:16-CV-11214-DML-SDD
    **Court:** United States District Court, Eastern District of Michigan, Southern Division
    **Retained By:** Giroux Ratton P.C.
        28588 Northwestern Hwy, Suite 100
        Southfield, MI 48034
    **Deposition Date:** March 31, 2017
    **Trial Date:** August 24, 2017

17. **Morad v. City of Long Beach, et al.**
    **Case Number:** 2:16-CV-06785-MWF-AJW
    **Court:** United States District Court, Central District of California
    **Retained By:** Hadsell Stormer Renick, LLP
        128 North Fair Oaks Ave, Suite 204
        Pasadena, CA 91103
    **Deposition Date:** November 7, 2017