

# "FIGHTING TO BREATHE"

## THE CASE AGAINST PRONE RESTRAINT

*Individuals with Disabilities Face an Increased Risk of Death
When Placed in Prone Restraint*

DISABILITY LAW CENTER OF ALASKA
FEBRUARY 2017

PLAINTIFF'S
EXHIBIT

24

exhibitsticker.com

# *"Fighting to Breathe"*

## The Case Against Prone Restraint

"[T]he technique has been cited in several high-profile deaths, including that of Robert Ethan Saylor, an overweight man with Down syndrome who died after a struggle with deputies in a Maryland movie theater; Tanisha Anderson, a mentally ill woman held on her stomach after she tried to escape the back seat of a Cleveland police patrol car; and Robert Minjarez, a cocaine user held down by Louisiana officers as he cried in an increasingly muffled voice, "I can't breathe."[1]

Compared to most other forms of restraint, prone restraint significantly impedes breathing. The natural response - struggling for breath - is often perceived as resistance to authority and met with more force.  In many cases the result is death by asphyxia.  During a teleconference in 2000, a speaker for the National Institute of Corrections (NIC) explained:

> *"They're not fighting to fight the officers. They're fighting to breathe."*
>
> Ed Wolahan, Corrections Specialist with the National Institute of Corrections

> The natural reaction to [having difficulty breathing] is to struggle more violently.  The perception of those trying to subdue the individual is that he needs more compression to be subdued.  You then enter a vicious cycle in which compression makes air hunger, air hunger makes a greater struggle, and greater struggle demands greater compression.  Unfortunately, in some of these circumstances, the price of tranquility is death.[2]

**These deaths are preventable.**  Before another individual dies, it is critical for all agencies within Alaska to significantly restrict or eliminate the use of prone restraint through law, regulations and policy.  Where not eliminated, agencies must require training on the appropriate use of all restraints and, most importantly, on how to identify breathing difficulties during any restraint event.

---

[1] https://www.correctionsone.com/treatment/articles/67867187-Denver-jail-death-puts-new-light-on-common-restraint-tactic/

[2] William P. Angrick II, *Iowa Citizens' Aide/Ombudsman, Investigation of Restraint Device Use in Iowa's County Jails*, November 5, 2008, citing Videotape:  Application and Use of Restraints in Custody: Reducing the Risks (National Institute of Corrections Teleconference, April 19, 2000).



Generally, the term "prone restraint" describes when an individual is placed face down on a surface, such as a floor or a bed, and held there by one or more staff by immobilizing the individual's limbs and placing downward pressure so that the individual cannot rise. At times this can include placing pressure on the individual's neck, using various holds, like a figure four leg lock, and placing one's weight on the individual's extremities, back or some combination thereof. Prone restraint is also defined as:

...all items or measures used to limit or control the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time. Prone restraint includes physical or mechanical restraints.[3]



The tragic event that gave rise to this report was the needless and preventable death of a prison inmate. During the course of the Disability Law Center of Alaska's (DLC) investigation into the death of Larry Kobuk, an individual in custody at the Anchorage Correctional Complex (ACC), DLC staff viewed the video of Mr. Kobuk being restrained, in the prone position, by four correctional officers.[4] Mr. Kobuk had previously informed ACC medical staff that he suffered from cardiomyopathy (a disease of the heart muscle) for which he took medication.[5] With his hands cuffed behind his back, Mr. Kobuk was placed in the prone position with two of the four correctional officers applying their body weight to his back, while another officer controlled his legs. At various points during the restraint, each of the four officers participated in the removal of Mr. Kobuk's clothing. After officers released him, Mr. Kobuk was unresponsive. He was eventually transported to a local hospital where he died. The Alaska Department of Public Safety's Incident Report stated the State Medical Examiner described his cause of death as:

...ventricular fibrillation due to cardiomyopathy in association with methamphetamine toxicity and mechanical restraint.

---

[3] *Report on Use of Restraint and Seclusion in State of Ohio Programs,* at 2 (June 1, 2014). May be found at http://www.healthtransformation.ohio.gov/LinkClick.aspx?fileticket=zawRkF5H5w0%3D&tabid=249.
[4] Video available online at https://www.youtube.com/watch?v=a1Zo3zfvZwY.
[5] *Alaska Department of Corrections: An Administrative Review* at 12, Williams and Hanlon (November 13, 2015).

The danger in using prone restraint is that it places an individual's body in a position that does not allow adequate breathing. This practice is of such concern that many states have banned the use of prone restraints with children. In 2014, the Alaska Legislature acknowledged the risks associated with prone restraint when it banned its use in schools, a bill that was signed into law by the Governor.[6] Congress has periodically attempted to pass legislation that would ban the use of prone restraints in schools nationwide, though such legislation has not been enacted as of this writing.

The mechanism of breathing involves two primary functions of the body: movement of the ribs by the intercostal muscles and movement of the diaphragm.[7] The ribs expand and the diaphragm contracts, drawing air into the lungs (inhaling). The ribs and diaphragm then relax, releasing air from the lungs (exhaling).[8]

When an individual is restrained in a prone position, two things happen that interfere with breathing:

1. There is a compression or restriction to movement of the ribs limiting the individual's ability to expand the chest cavity and breathe;[9] and

2. The abdominal organs may be pushed up, restricting movement of the diaphragm and further limiting the available space for the lungs to expand.[10]

Simply restraining an individual in a prone position, even without any other contributing factors, restricts the ability to breathe, thus lessening the supply of oxygen to meet the body's demands.[11] This phenomenon is frequently referred to as "Positional Asphyxia," a condition that occurs when the body's position interferes with adequate breathing.[12]

---

[6] AS 14.33.125

[7] Parkes, J., *Sudden Death During Restraint: A study to measure the effect of restraint positions on the rate of recovery from exercise* (Medicine, Science, and the Law, 40 (1), January 2000), p. 40; Reay, D.T.; Fligner, C.L.; Stilwell, A.D. & Arnold, J., *Positional asphyxia during law enforcement transport* (The American Journal of Forensic Medicine and Pathology, 13 (2), 1992), p. 94.

[8] Protection & Advocacy, Inc., Investigations Unit, Oakland, California, *The Lethal Hazard of Prone Restraint: Positional Asphyxiation,* April 2002.

[9] Parkes, J., *Sudden Death During Restraint: A study to measure the effect of restraint positions on the rate of recovery from exercise* (Medicine, Science, and the Law, 40 (1), January 2000), p. 40; Stratton, S.J.; Rogers, C.; Brickett, K. & Gruzinski, G.; *Factors Associated with Sudden Death of Individuals Requiring Restraint for Excited Delirium* (The American Journal of Emergency Medicine, 19 (3), 2001, May), p. 90.

[10] Parkes, J., *Sudden Death During Restraint: A study to measure the effect of restraint positions on the rate of recovery from exercise* (Medicine, Science, and the Law, 40 (1), January 2000), p. 40; Reay, D.T.; Fligner, C.L.; Stilwell, A.D. & Arnold, J., *Positional asphyxia during law enforcement transport* (The American Journal of Forensic Medicine and Pathology, 13 (2), 1992), p. 95.

[11] Protection & Advocacy, Inc., Investigations Unit, Oakland, California, *The Lethal Hazard of Prone Restraint: Positional Asphyxiation,* April 2002.

[12] Mohr & Mohr, 2000, p.289; National Institute of Justice Program [NIJP], 1995, p. 1.

This may result in death due to "...a sudden fatal cardiac arrhythmia or respiratory arrest due to a combination of factors causing decreased oxygen delivery at a time of increased oxygen demand."[13]



Applying weight to the individual, such as sitting on an individual's torso, or putting one's knee and body weight on the individual's back or neck, increases the individual's difficulty in breathing. It becomes even more difficult if the individual's hands are placed behind their back, such as when handcuffed.[14]

Contributing factors that place an individual at a higher risk for positional asphyxia during a prone restraint include:

- Pre-existing heart disease, including an enlarged heart (hypertrophic cardiomyopathy) and other cardiovascular disorders;[15]
- Prolonged struggle or physical exertion;[16]
- Drug and/or alcohol intoxication, in particular cocaine and methamphetamine intoxication or cocaine-induced psychosis;[17]
- Obesity;[18]

---

[13] Protection & Advocacy, Inc., Investigations Unit, Oakland, California, *The Lethal Hazard of Prone Restraint: Positional Asphyxiation,* April 2002.

[14] Meghan Fay, Assistant Editor; *Reducing the Risk Associated with Use of Restraints* (Corrections.com). May be found at http://www.corrections.com/articles/6887-reducing-the-risk-associated-with-use-of-restraints.

[15] O'Halloran, R.L. & Frank, J.G.; *Asphyxial Death During Prone Restraint Revisited: A Report of 21 Cases* (The American Journal of Forensic Medicine and Pathology, 2000, 21 (1)), p. 51; Paterson, B., Leadbetter, D. & McCornish, A.; *Restraint and Sudden Death from Asphyxia* (Nursing Times, 95 (44), 1998, November 4); p. 62; Stratton, S.J., Rogers, C., Brickett, K. & Gruzinski, G.; *Factors Associated with Sudden Death of Individuals Requiring Restraint for Excited Delirium* (The American Journal of Emergency Medicine, 19 (3), 2001, May); p. 187.

[16] O'Halloran, R.L. & Frank, J.G.; *Asphyxial Death During Prone Restraint Revisited: A Report of 21 Cases* (The American Journal of Forensic Medicine and Pathology, 2000, 21 (1)), p. 49; Paterson, B., Leadbetter, D. & McCornish, A.; *Restraint and Sudden Death from Asphyxia* (Nursing Times, 95 (44), 1998, November 4); p. 62.

[17] National Institute of Justice Program (1995, June); *Positional Asphyxia: Sudden Death,* (National Law Enforcement Technology Center Bulletin), p.1; Stratton, S.J., Rogers, C., Brickett, K. & Gruzinski, G.; *Factors Associated with Sudden Death of Individuals Requiring Restraint for Excited Delirium* (The American Journal of Emergency Medicine, 19 (3), 2001, May); p. 191; O'Halloran, R.L. & Frank, J.G.; *Asphyxial Death During Prone Restraint Revisited: A Report of 21 Cases* (The American Journal of Forensic Medicine and Pathology, 2000, 21 (1)).

[18] Paterson, B., Leadbetter, D. & McCornish, A.; *Restraint and Sudden Death from Asphyxia* (Nursing Times, 95 (44), 1998, November 4); p. 62.

- Respiratory syndromes, including asthma and bronchitis;[19]
- Exposure to Pepper Spray (Capsicum);[20]
- Agitated delirium syndrome (also known as excited delirium or acute excited states).[21]

In 2011, Equip for Equality, the Protection and Advocacy System in Illinois, released a report entitled "*National Review of Restraint Related Deaths of Children and Adults with Disabilities: The Lethal Consequences of Restraint.*"[22] Sixty-one (61) deaths were examined, with children as young as 9 and adults as old as 95. The deaths occurred between September 1999 and August 2005, in both large and small communities, and in a variety of settings. Listed

> Experts warn the common but risky police tactic of restraining someone in a prone position can be lethal, especially on those with medical problems and the mentally ill, whose distress is sometimes confused with resistance.

below are some of the more significant and relevant findings of the study:

- Nearly 75% of those who died had a psychiatric history, with the most common known diagnoses being schizophrenia, other psychotic disorders and mood disorders.
- Twenty-five percent of those who died had a history of intellectual disabilities, learning disorders or other developmental disabilities.
- More than half of those who died were overweight or obese.
- Nearly everyone who died had a medical condition that existed at the time they were restrained, which most frequently related to neurological, cardiac or respiratory conditions.
- The most frequently identified medical conditions contraindicating the use of restraint were current cardiac compromise (44%), obesity (41%), and current respiratory compromise (30%).

---

[19] *Id.*

[20] *Id.*

[21] This is a condition of extreme mental and motor excitement characterized by aggressive activity with confused and unconnected thoughts, hallucinations, paranoid delusions and incoherent or meaningless speech. Farnham, F.R. & Kennedy, H.G.; *Acute Excited States and Sudden Death* (British Medical Journal (BMJ), 315 (7116), 1997, November 1); p. 1107; O'Halloran, R.L. & Lewman, L.V.; *Restraint Asphyxiation in Excited Delirium* (The American Journal of Forensic Medicine and Pathology, 14 (4), 1993); p. 292; O'Halloran, R.L. & Frank, J.G.; *Asphyxial Death During Prone Restraint Revisited: A Report of 21 Cases* (The American Journal of Forensic Medicine and Pathology, 2000, 21 (1)); p. 48.
[22] http://m-power.org/wp-content/uploads/2016/07/National-Review-of-Restraint-Related-Deaths-of-Adults-and-Children-with-Disabilities-The-Lethal-Consequences-of-Restraint.pdf

- The most common physical restraint (27 of 32 cases) involved staff members physically holding the individual down on the floor.

- Forty-seven percent (24 of the 51 cases) of the cases with available information involved a takedown to the floor during the restraint process, a high-risk procedure even for staff members trained in the risks.

- Of the 69 dangerous practices identified, 54% involved a person lying face-down in a prone position.

"Correctional authorities should not hog-tie prisoners or restrain them in a fetal or prone position."

*Standards on the Treatment of Prisoners*
American Bar Association

- Forty-three percent (12 of 28) of the cases with available information documented that the individual restrained indicated verbally or nonverbally to staff that he or she was in physical distress while being restrained. The staff responded to the person's indication of physical distress in only half of these cases. Yet even when staff responded, the individuals died.

- In 82% of all the cases, the restraint either directly or indirectly contributed to the person's death. Most of the individuals died from being asphyxiated or as a result of heart disease.

Another study of restraint-related deaths, issued in 1999, reviewed the deaths of 21[23] individuals, ages 17-45 years old, who died between 1992 and 1996.[24] Six of the 21 individuals were "hogtied"[25] during the restraint. The remaining individuals had body weight applied to their upper torso at the time they lost consciousness.[26] Seven of the individuals displayed signs of delirium, five were found with alcohol or illicit drugs in their system.

---

[23] All but 4 of the 21 deceased individuals came to the attention of the reviewing physicians because of litigation.

[24] Ronald L. O'Halloran, M.D. and Janice G. Frank, M.D., *Asphyxial Death During Prone Restraint Revisited – A Report of 21 Cases* (The American Journal of Forensic Medicine and Pathology 21(1): 39-52, 2000).

[25] The term hogtying is used to refer to the restraint of a person in a prone position with their wrists and ankles bound together behind the back. *Id.*, p. 39. The term "Prone Maximal Restraint Position" is also associated with this practice. Davut J. Savaser, et al., *The Effect of the Prone Maximal Restraint Position with and without Weight force on Cardiac Output and other Hemodynamic Measures* (Journal of Forensic and Legal Medicine, August 2013, Vol. 30).

[26] Ronald L. O'Halloran, M.D. and Janice G. Frank, M.D., *Asphyxial Death During Prone Restraint Revisited – A Report of 21 Cases* (The American Journal of Forensic Medicine and Pathology 21(1): 39-52, 2000); p. 46.

These and other studies, as well as individual stories of people who have died while in police custody as a result of prone restraints, further illustrate why this practice should be restricted or eliminated in Alaska.  As noted above, people who are especially vulnerable for injury or death with the use of prone restraint are those with pre-existing cardiac problems; those who are under the influence of illicit drugs, such as heroin, cocaine or amphetamines; those who are under the influence of alcohol, especially chronic users; and those who are obese.  The use of prone restraint for these individuals is absolutely contraindicated.  Although there is a high risk for positional asphyxia without other factors, the potential for death increases significantly when weight is applied to the individual while in a prone restraint.

> NYPD's Guidelines to Preventing Deaths in Custody
>
> - As soon as the subject is handcuffed, *get him off his stomach*. Turn him on his side or place him in a seated position.
> - If he continues to struggle, *do not sit on his back*. Hold his legs down or wrap his legs with a strap.

As previously noted, a number of states have prohibited the use of prone restraints on students.  A few states have attempted to restrict the use of prone restraint in most programs,[27] although usually carving out an exception for law enforcement and corrections.  However, in at least one state, Ohio, the use of prone restraint has been severely restricted:[28]

The Ohio Department of Rehabilitation and Correction has adopted the following policy:

> Prone Restraint – All items or measures used to limit or control the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time. Prone restraint includes physical or mechanical restraints. **The use of prone restraint is prohibited.**[29] (emphasis added)

---

[27] Kentucky (http://www.lrc.ky.gov/kar/902/020/320.htm); Texas (http://www.statutes.legis.state.tx.us/Docs/HS/htm/HS.322.htm); Washington D.C. (www.dcregs.dc.gov/Notice/DownLoad.aspx?VersionID=4394893); Minnesota (https://www.revisor.mn.gov/statutes/?id=245D.06); South Dakota (http://www.sdlegislature.gov/rules/DisplayRule.aspx?Rule=46:11:05:06.02); Rhode Island (http://webserver.rilin.state.ri.us/Statutes/TITLE42/42-158/42-158-4.HTM); Maryland (http://mgaleg.maryland.gov/webmga/frmStatutesText.aspx?article=ghg&section=10-701&ext=html&session=2017RS&tab=subject5).

[28] A copy of the Honorable Ted Strickland's actual order is attached at the end of this report as an appendix.  Mr. Strickland was Ohio's Governor at the time the ban on Prone Restraints, Executive Order 2009-13S, was issued; August 3, 2009.

[29] http://www.drc.ohio.gov/Portals/0/Policies/DRC%20Policies/63-UOF-04.pdf?ver=2016-09-01-142051-640.

While generally prohibited in a number of departments within state government, an Ohio Corrections policy does permit a brief face-down restraint, referred to as a "Transitional Hold" which is defined as:

> Transitional Hold – A brief physical positioning of an individual face-down for the purpose of quickly and effectively gaining physical control of that individual in order to prevent harm to self and others, or prior to transport to enable the individual to be transported safely. Transitional hold may include the use of handcuffs or other restraints consistent with departmental policy.[30]

The policies adopted by the Ohio Corrections stemmed from an Executive Order 2009-13S issued by then-Governor Strickland entitled *Establishing Restraint Policies Including a Ban on Prone Restraints.[31]* The Order encompassed approximately 14 different state departments, including Corrections and Public Safety. The underlying reason for the Order is set out in paragraph 3:

> **Research Has Shown That the Prone Position is a Hazardous and Potentially Lethal Restraint Position.** Accepted research has shown that there is a risk of sudden death when restraining an individual in a prone position. The prone position occurs when an individual is face-down. This research has led other states to prohibit the use of this restraint technique. (emphasis in original).

Each state agency was "required to identify the risks associated with restraint and seclusion specific to persons served in that agency, outline required training components for staff, and specify how the policy requirements will be tracked and reported, and how performance in meeting the policy requirements will be improved."[32] Why? "Because every person served by the State of Ohio should be treated with dignity, respect and the utmost regard for physical safety and emotional and psychological well-being."[33]

---

[30] *Id.*

[31] https://education.ohio.gov/getattachment/Topics/Other-Resources/School-Safety/Building-Better-Learning-Environments/Policy-Positive-Behavior-Interventions-and-Support/Seclusion-and-Restraint-EO-09-13S.pdf.aspx. Attached here as Appendix A.

[32] http://www.healthtransformation.ohio.gov/LinkClick.aspx?fileticket=zawRkF5H5w0%3D&tabid=249.

[33] *Id.* In January 2011, Ohio Governor Kasich extended Governor Strickland's original Executive Order, furthering the ban on prone restraint and limitations on other types of physical restraint.

## Alternative Restraint Positions and Transitional Holds

Though no type of restraint is completely safe, there are alternative holds that can be used that are considered safer than prone restraint. Examples include placing persons on their side, sitting, or standing facing a wall; and putting persons in a supine as opposed to a prone position. Also, there are transitional holds that reduce the risk to persons being restrained.

### Supine Position

Supine position, while not considered a safe practice, is thought to be safer than prone as the risk is not as great. Supine restraint means that someone is held face up, as opposed to prone restraint which is face down. While there is a risk of aspiration with the supine position, current studies indicate that the risk of asphyxiation in the supine position is lower than with prone restraint. In fact, in a research paper written by John Parkes, he includes multiple studies which found that an agitated, resistive individual's breathing is more compromised in the prone position as opposed to the supine position.[34] Like the transitional hold, this position should only be used as an interim hold until the individual can be placed in a safer position.

### Transitional Holds

As mentioned above, Ohio Corrections, while banning the use of prone restraint, does allow the use of a transitional hold for a brief amount of time as long as certain protections are in place.[35] Unlike prone restraint which can result in an individual being restrained for an extended amount of time, a transitional hold is brief. Transitional holds should only be used when other techniques of intervention have been tried and failed and when the individual is not a high risk, such as if they have a heart condition or are agitated.[36]

If a transitional hold is the only containment tool available there are ways to increase the safety of the maneuver. First, pressure or weight should never be applied to the person's back, or if the supine position, lungs, stomach or diaphragm. Second, prone

---

[34] Parkes, J., *Sudden Death During Restraint: A study to measure the effect of restraint positions on the rate of recovery from exercise* (Medicine, Science, and the Law, 40 (1), January 2000), p. 41.
[35] The use of transitional hold may be permitted only when all of the following conditions are met and as determined by departmental policy. Transitional hold may be applied: 1. Only by staff with current training on the safe use of this procedure, including how to recognize and respond to signs of distress in the individual; 2. Only in a manner that does not compromise breathing, including the compromise that occurs with the use of pressure or weight bearing on the back, soft devices such as pillows under an individual's face or upper body, or the placing of an individual's or staff's arms under the individual's head, face or upper body; 3. Only for the reasonable amount of time necessary to safely bring the person or situation under control and to ensure the safety of the individuals involved; and 4. Only with consistent and frequent monitoring during and after the intervention with every intent to assure that the person is safe and suffers no harm. Ted Strickland, Governor of Ohio, Executive Order 2009-13S, *Establishing Restraint Policies Including a Ban on Prone Restraints*, (August 3, 2009).
[36] *The Lethal Hazard of Prone Restraint: Positional Asphyxiation*, Disability Rights California (named Protection & Advocacy, Inc. at the time the paper was written), Publication #7018.01, pp. 7-8, (April 2002).

restraint should never be used when there is something soft, such as a pillow or mattress under an individual's face or upper body.[37]

If transitional holds are allowed under certain circumstances, there must be restrictions for the amount of time it takes to secure the individual until correctional officers are able to return the person to a safer position, such as standing. Constant monitoring by someone other than the individual placing someone in a transitional hold is also recommended.[38]

## Conclusion

As noted in a recent administrative review of the Alaska Department of Corrections, "An inmate with a reported heart condition might warrant decreased force or more opportunities to comply without use of force."[39] In the case of Mr. Kobuk, if the Department had had a policy prohibiting or restricting the use of prone restraint and a training program on the safe use of restraints, he would likely be alive today.

For the reasons set forth above, every effort should be made in every branch of state government to prohibit the use of prone restraint. If necessary, transitional prone restraint should only be attempted when all other techniques are ineffective to prevent imminent serious harm and only when proper conditions are met to protect the individual from positional asphyxiation. Finally, all staff involved in applying restraints must be educated regarding the risks of positional asphyxiation with prone restraint.

Ohio's Executive Order is attached to this report to serve as a general guide and to demonstrate what can be accomplished when a state believes that "every person . . . . should be treated with dignity, respect and the utmost regard for physical safety and emotional and psychological well-being."

---

[37] Ted Strickland, Governor of Ohio, Executive Order 2009-13S, *Establishing Restraint Policies Including a Ban on Prone Restraints*, p. 3, (August 3, 2009).
[38] *Id.*
[39] Alaska Department of Corrections: An Administrative Review at 13, Williams and Hanlon (November 13, 2015).



## TED STRICKLAND

## Executive Order 2009 — 13S

Establishing Restraint Policies

Including a Ban on Prone Restraints

1. Ohio Has Taken Steps to Address the Risks Posed By the Use of Restraints. Upon my direction, seven state departments joined together to create a work group dedicated to researching issues related to the use of physical restraints when providing their respective services. The work group focused on prone restraint, defined as all items or measures used to limit or control the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time, and transitional hold, defined as a brief physical or manual positioning of an individual face-down for the purpose of quickly and effectively gaining physical control of that individual in order to prevent harm to self or others, or prior to transport to enable the person to be transported safely. The seven state departments that joined together are: the Ohio Departments of Mental Retardation and Developmental Disabilities, Mental Health, Alcohol and Drug Addiction Services, Youth Services, Education, Job and Family Services, and Health.

2. Ohio is Committed to Providing Services in a Safe, Caring, and Therapeutic Manner. Each of the departments listed above serve our citizens in different ways. There are occasions where they must all respond to situations where our citizens receiving services engage in behavior that is potentially harmful to themselves and others. Ohio is committed to having these and other state departments respond to such situations in a manner that focuses on assisting citizens to live meaningful lives that are free of coercion or violence of all kinds. Services are provided by a caring and competent workforce in the safest and least intrusive or restrictive method available. The use of restraint is a method of last resort and the exception rather than the norm for daily delivery of services. The focus of these state service providers should be on using a positive approach and reducing the need for physical intervention.

3. Research Has Shown That the Prone Position is a Hazardous and Potentially Lethal Restraint Position. Accepted research has shown that there is a risk of sudden death when restraining an individual in a prone position. The prone position occurs when an individual is face-down. This research has led other states to prohibit the use of this restraint technique.

4. Ohio Adopts the Following Policy on the Use of Prone Restraint, Transitional Hold, and Other Types of Physical Restraint.

I hereby order the Ohio Departments of Mental Retardation and Developmental Disabilities, Mental Health, Alcohol and Drug Addiction Services, Youth Services, Education, Job and Family Services,

Health, Aging, Commerce, Natural Resources, Public Safety, Rehabilitation and Correction, and Veterans Services, and the Ohio Board of Regents to immediately adopt the following Policy on the Use of Prone Restraint, Transitional Hold, and Other Types of Physical Restraint. This policy may be incorporated into preexisting policies to the extent that the pre-existing policies do not conflict with the policy below. The safeguards contained within this policy should be seen as the minimum acceptable standards. Each department retains the right to adopt safeguards which are more restrictive (meaning they permit even less physical restraint) than those in the policy, as it deems appropriate for its delivery of services. In addition, law enforcement will ensure that their related, internal policies are consistent with the policy below.

Policy on the Use of Prone Restraint, Transitional Hold, and Other Types of Physical Restraint

A.    PRONE RESTRAINT: The use of the prone restraint is prohibited across all state systems. Prone restraint is defined as all items or measures used to limit or control the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time. Prone restraint includes physical or mechanical restraints.

B.    TRANSITIONAL HOLD: Transitional hold is defined as a brief physical positioning of an individual face-down for the purpose of quickly and effectively gaining physical control of that individual in order to prevent harm to self and others, or prior to transport to enable the individual to be transported safely. Transitional hold may include the use of handcuffs or other restraints incident to arrest or temporary detention by law enforcement consistent with departmental policy.

The use of transitional hold may be permitted only when all of the following conditions are met and as determined by departmental policy:

1.    Transitional hold may be applied only by staff with current training on the safe use of this procedure, including how to recognize and respond to signs of distress in the individual;

2.    Transitional hold may be applied only in a manner that does not compromise breathing, including the compromise that occurs with the use of: (1) pressure or weight bearing on the back; (2) soft devices such as pillows under an individual's face or upper body; or (3) the placing of an individual's or staffs arms under the individual's head, face, or upper body;

3.    Transitional hold may be applied only for the reasonable amount of time necessary to safely bring the person or situation under control and to ensure the safety of the individuals involved; and

4.    Transitional hold may be applied only with consistent and frequent monitoring during and after the intervention with every intent to assure that the person is safe and suffers no harm.

C.    LIMITATIONS ON THE USE OF OTHER TYPES OF PHYSICAL RESTRAINT: Because physical restraint, in general, is not viewed as a therapeutic or beneficial intervention, other types of physical restraint are to be used only when there is risk of escape or harm to the individual or others, or by personnel within the specific guidelines of a secured facility. A secured facility is defined as any site that is designed and operated to ensure that all of its entrances and exits are locked and under the exclusive control of its staff and to ensure that, because of that exclusive control, no person who is institutionalized or confined in the facility may leave the facility without

permission or supervision. Physical restraint may only be used by trained staff and under the approval, guidance, and restrictions as outlined within each department's policies.

5.  Ohio Will Take Steps To Address the Use of Restraint and Seclusion By Establishing the Ohio Policy Committee on Restraint and Seclusion. The use of restraint and seclusion can have a lasting impact on both individuals receiving care and the caregivers themselves. In order to ensure that Ohio is establishing best practices in regard to the use of such interventions, I am hereby establishing the Ohio Policy Committee on Restraint and Seclusion, which will be an extension of the work done to date by the seven state departments identified above.

  A.  This Committee will be comprised of members appointed by the directors of the following departments:

    1.  Ohio Department of Mental Retardation and Developmental Disabilities

    2.  Ohio Department of Mental Health

    3.  Ohio Department of Alcohol and Drug Addiction Services

    4.  Ohio Department of Youth Services

    5.  Ohio Department of Education

    6.  Ohio Department of Job and Family Services

    7.  Ohio Department of Health

    8.  Ohio Department of Aging

    9.  Ohio Department of Commerce

    10.  Ohio Department of Natural Resources

    11.  Ohio Department of Public Safety

    12.  Ohio Department of Rehabilitation and Correction

    13.  Ohio Department of Veterans Services

    14.  Ohio Board of Regents

  B.  The Committee is charged with creating a single state policy on the use of restraint and seclusion founded on the principle that individuals served by these departments should be treated with dignity, respect, and the utmost regard for physical safety, and emotional and psychological well-being. The policy will include: identification of the risks associated with restraint and seclusion, outlining of required training components, tracking and reporting the policy's requirements, and performance improvement.

6.  I signed this Executive Order on August 3, 2009, in Columbus, Ohio, and it will not expire unless it is rescinded.



*Ted Strickland*

Ted

Strickland, Governor

ATTEST:

_____

Jennifer Brunner, Secretary of State